UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

RICH LAND SEED CO., INC., ET AL.          CIV. ACTION NO. 3:21-01070

VERSUS                                    JUDGE TERRY A. DOUGHTY

BLSW PLEASURE CORP., ET AL.               MAG. JUDGE KAYLA D. MCCLUSKY

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. # 12] filed by Plaintiff Rich Land Seed Co., Inc.   The motion is opposed.   For reasons explained below, it is recommended that the motion to remand be DENIED, and that Plaintiff's claims brought as relator on behalf of the State of Louisiana and the Commissioner of Conservation be dismissed, without prejudice.   It is further recommended that Plaintiff's own claims against Defendants, BLSW Pleasure Corporation; Bryson Oil & Gas, Inc.; C H Cuatro; Equitable Petroleum Corporation; Lo-Ho-Fi Corporation; Loe Oil & Gas Corporation; Marlog, Inc.; Quad Drilling Corporation; S. H. Loe Oil Corporation; WG Gas LLC; and WG Gas, LLC, be dismissed, without prejudice.

<u>Background</u>

On March 9, 2021, Plaintiff Rich Land Seed Co., Inc. ("Rich Land") filed the instant oilfield contamination suit on its own behalf, and as relator on behalf of the State of Louisiana and the Commissioner of Conservation, in the Fifth Judicial District Court for the Parish of Richland, State of Louisianam against fourteen named Defendants, plus an unknown insurance company, arising out of decades-long oil and gas exploration and production activities conducted on the Plaintiff's properties by the Defendants and/or their predecessors.   Made Defendants were BLSW Pleasure Corporation ("BLSW"); Bryson Oil & Gas, Inc. ("Bryson"); C H Cuatro

("Cuatro"); Chevron Pipe Line Company ("Chevron"); City of Memphis Light, Gas & Water Division, Inc. (more properly identified as Memphis Light, Gas & Water) ("Memphis"); Equitable Petroleum Corporation ("Equitable"); Lo-Ho-Fi Corporation ("Lo-Ho-Fi"); Loe Oil & Gas Corporation ("Loe Oil"); Marathon Oil Company ("Marathon"); Marlog, Inc. ("Marlog"); Quad Drilling Corporation ("Quad"); S. H. Loe Oil Corporation ("S.H. Loe Oil"); WG Gas LLC ("WG Gas I"); WG Gas, LLC ("WG Gas II"); and ABC Insurance Company.   (Petition for Damages).

On April 21, 2021, Defendants, Memphis, Marathon, and Chevron, removed the suit to federal court on the sole basis of diversity jurisdiction, 28 U.S.C. § 1332.   (Notice of Removal). Plaintiff, Rich Land, is a Louisiana corporation, with its principal place of business in Louisiana. *Id*.   Defendant, Chevron, is a Delaware corporation, with its principal place of business in California; Defendant, Marathon, is an Ohio corporation, with its principal place of business in Texas; and Defendant, Memphis, is a Tennessee corporation, with its principal place of business in Tennessee.   *Id*.   Nine of the eleven remaining named Defendants are citizens of Louisiana for purposes of diversity (BLSW, Bryson, Cuatro, Equitable, Lo-Ho-Fi, Loe Oil, Marlog, Quad, and S.H. Loe Oil).   *Id*.   Furthermore, while WG Gas I and II are citizens of Alabama,[1] they, together with some of the other non-diverse Defendants, were served with the petition, but failed to consent to removal.   *Id*.

To overcome the patent lack of diversity between Rich Land and the nine Louisiana Defendants, as well as the failure of WG Gas I and II, and other served Defendants, to timely consent to removal, removing defendants contend that Rich Land has no reasonable possibility of

---

[1] For purposes of diversity, the citizenship of a limited liability company is determined by the citizenship of all of its members.   *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).   Wesley Griffith, an Alabama citizen, is the lone member of both WG Gas LLCs. (Notice of Removal).

2

recovery against any of these non-diverse and/or non-consenting Defendants, and, therefore, they were improperly joined in an attempt to defeat federal subject matter and removal jurisdiction. (Notice of Removal).[2]

On May 21, 2021, Rich Land filed the instant motion to remand the case to state court on the grounds that this court lacked subject matter and removal jurisdiction.   (M/Remand [doc. # 12]).   Specifically, Plaintiff made the following arguments:

1)    The removal notice is fatally procedurally defective due to failure of consent.

2)    Complete diversity does not exist between the plaintiff and the defendants, and the Removing Defendants' Notice of Removal fails to state the required jurisdictional facts. 28 U.S.C. 1332.

3)    The failure to properly and sufficiently allege the citizenship of all parties renders the removal notice defective on its face.

4)    The failure to allege or even address the citizenship of the State of Louisiana, through the Department of Natural Resources, renders the removal notice defective on its face.

5)    The plaintiffs have alleged and established valid and viable causes of actions against al[l] defendants including the State of Louisiana, through the Department of Natural Resources [sic].

*Id.*, pg.1.

On June 14, 2021, removing Defendants filed their opposition to the motion to remand whereby they maintained that the non-diverse, non-consenting Defendants were improperly joined, and, therefore, their presence must be disregarded for purposes of diversity and removal jurisdiction.   (Defs. Opp. Memo. [doc. # 14]).   Plaintiff filed a reply brief on June 21, 2021. (Reply Memo. [doc. # 15]).   Accordingly, the matter is ripe.

---

[2] Of course, the citizenship of the fictitiously named ABC Insurance Company is disregarded for purposes of removal.   28 U.S.C. § 1441(b).

## **Analysis**[3]

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id*. Because federal courts are courts of limited jurisdiction, a suit is presumed to lie outside this limited jurisdiction unless and until the party invoking federal jurisdiction establishes to the contrary. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted). The removal statutes are strictly construed in favor of remand. *Manguno, supra*.

## I.    **Rule of Unanimity and Removal Jurisdiction**

It has long been the rule in the Fifth Circuit, that all *properly joined* and served defendants must join in the notice of removal or otherwise consent to removal within the 30-day period set forth in 28 U.S.C. ' 1446(b). *Jones v. Scogin*, 929 F. Supp. 987, 988 (W.D. La. 1996) (citing *Getty Oil, Div. Of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1263 (5th Cir. 1988)). Failure to do so, renders the removal defective. *Getty Oil*, 841 F.2d at 1263. While each defendant need not sign the notice of removal, there must be "some timely filed written indication from each served defendant, or from some person or entity purporting to formally act

---

[3] If the present scenario sounds familiar, that is because it is. The law firm representing Plaintiff in this matter has filed similar suits over the past few years that were removed to the Monroe Division of this court. *See e.g.*, *Green v. BP Am. Prod. Co.*, Civ. Action No. 18-0888 (W.D. La.), *Lowry v. Total Petrochemicals & Ref. USA, Inc.*, Civ. Action No. 18-0864 (W.D. La.), *Watson v. Arkoma Dev., LLC*, Civ. Action No. 17-1331 (W.D. La.), *Gibson v. BP Am. Prod. Co.*, Civ. Action No. 17-1439 (W.D. La.), *Locust Ridge Plantation, L.L.C. v. Adco Producing Co., Inc.*, Civ. Action No. (W.D. La.). Plaintiffs filed motions to remand in each of the cases. Some were remanded; some were not. Needless to say, the court does not write on a clean slate, and will freely incorporate pertinent provisions of the prior decisions.

on its behalf in this respect and to have the authority to do so, that it has actually consented to such action." *Gillis v. Louisiana,* 294 F.3d 755, 759 (5th Cir. 2002) (quoting, *Getty,* 841 F.2d at 1262 n.11).

The Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA"), codified the foregoing principles, as follows, "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been *properly joined* and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A) (emphasis added). Here, removing defendants plainly effected removal solely under § 1441(a). (Notice of Removal, § II). Therefore, all properly joined and served defendants were required to timely consent to removal herein.

Plaintiff contends that remand is required because, between March 15 and April 7, 2021, it purported to serve Defendants, BLSW, Bryson, Equitable, Lo-Ho-Fi, Loe Oil & Gas Corporation, S.H. Loe Oil Corporation, WG Gas I, and WG Gas II. However, and Plaintiff's protestations notwithstanding, it has long been the rule in the Fifth Circuit that a removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.1993); *see also Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007). In fact, the removing defendant need not even explain the absence of consent in its notice of removal when it contends that the other defendant is improperly joined. *Jernigan,* 989 F.2d at 815. Furthermore, the exception to the unanimous consent requirement for improperly joined parties survived enactment of the JVCA. *See Mauldin v. Allstate Ins. Co.*, 757 Fed. App'x. 304, 309 (5th Cir. 2018) ("this court has repeatedly made clear that a removing defendant 'need not obtain the consent of a co-defendant that the removing party contends is improperly joined.'"); *see also Lowery, supra* (Doughty, J.).

Here, of course, removing defendants contend that all of the other named defendants

were improperly joined such that their presence may be disregarded B not only for purposes of diversity jurisdiction, but also for purposes of complying with the procedural requirements of removal, including unanimity.   Therefore, Plaintiff's argument, directed towards the alleged defect in the removal process, turns upon whether the non-consenting Defendants were *properly* joined.   *See* discussion, *infra*.   If they were not, then consent was unnecessary.

## II.    Subject Matter Jurisdiction

Removing defendants invoked this court's subject matter jurisdiction via diversity, which requires an amount in controversy greater than $75,000, and complete diversity of citizenship between plaintiffs and defendants, 28 U.S.C. § 1332(a).   In its motion to remand, Plaintiff stipulated that the amount in controversy exceeded $75,000.   (M/Remand, Memo., pg. 10).   More importantly, however, the court finds that it is facially apparent that the claimed damages exceeded $75,000 at the time of removal.   *See* Notice of Removal, § III(B).

The diversity jurisdiction statute presupposes a civil action between "citizens of different states," where all plaintiffs are diverse from all defendants.   28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990).   As stated earlier, Plaintiff Rich Land is a citizen of Louisiana, whereas, removing defendants are citizens of Delaware, California, Ohio, Texas, and Tennessee.   *See* Notice of Removal.   Removing defendants contend that all other named parties (including the State of Louisiana) were improperly joined, and, therefore, their presence may be disregarded for the purposes of jurisdiction.

III.    **Improper Joinder**[4]

As an initial matter, Plaintiff purported to bring suit in the name of the State of Louisiana and/or the Commissioner of Conservation under Louisiana Revised Statutes §§ 30:14 and 30:16. (Petition, ¶ 1).   It is well-established that a state is not a citizen for purposes of diversity jurisdiction, and, therefore, a court may not exercise diversity jurisdiction in a case where a state is a party.   *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 307 (5th Cir. 2021), *as revised* (Feb. 26, 2021); *Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983) (and cases cited therein).[5]   However, "if the State is a nominal party with no real interest in the dispute, its citizenship [or, more accurately, lack thereof] may be disregarded." *Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366 (5th Cir. 2006).

As it turns out, both the Fifth Circuit, and this court, have determined that a private party suing under § 30:16 does so on its own behalf, and that the State is not a proper party or real party in interest.   *See Grace Ranch, L.L.C.,* 989 F.3d at 308-09 ("Despite Grace Ranch's listing of Louisiana in the style of the case, the State is not a proper party because it has not authorized landowners to sue in its name. . . A private party suing under section 30:16 does so on its own behalf."); *Lowry v. Total Petrochemicals & Ref. USA, Inc.,* Civil Action No. 18-0864, 2018 WL 5931146, at *1 n.2 (W.D. La. Oct. 26, 2018), R&R adopted, 2018 WL 5931111 (W.D. La. Nov.

---

[4]  In its brief, Plaintiff consistently referred to improper joinder via its former appellation, "fraudulent" joinder.   In 2004, however, the Fifth Circuit adopted the term "improper joinder" in lieu of "fraudulent joinder."   *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 589 n.1 (5th Cir. 2004) (*en banc*).

[5]  "Likewise, state agencies that are the alter ego of the state are not citizens for the purposes of diversity jurisdiction."   *Tex. Dep't. of Hous. & Cmty. Affairs, supra; see also Tradigrain, Inc., supra; Firefighters' Ret. Sys. v. Consulting Grp. Servs., LLC*, 541 B.R. 337, 350 (M.D. La. 2015).

13, 2018) ("Insofar as plaintiffs also endeavored to bring suit in the name of the State of Louisiana and/or the Commissioner of Conservation, they lack statutory authority to do so, and the State and the Commissioner are not proper parties to this litigation.") (citation omitted).[6] Therefore, Plaintiff's claims brought on behalf of the State and the Commissioner of Insurance are improperly joined and subject to dismissal.  *See Miller v. Home Depot, U.S.A., Inc.*, 199 F. Supp.2d 502, 508 (W.D. La. 2001) (citing several sources) ("improper joinder" doctrine may be applied to the alleged improper joinder of a plaintiff); *Kitchens v. Ford Motor Co.*, Civ. Action No. 13-2446, 2014 WL 130337, at *2 (W.D. La. Jan. 14, 2014) (non-viable representative capacity claim subject to dismissal).

To disregard the citizenship and/or lack of consent of the other eleven, named Defendants, the removing defendants must establish that they were but nominal parties/improperly joined.   It has been long established that an improperly joined or nominal defendant will not defeat subject matter or removal jurisdiction.  *See Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 871 (5th Cir. 1991); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005)).   Nonetheless, "[t]he improper joinder doctrine constitutes a narrow exception to the rule of complete diversity."  *McDonal*, 408 F.3d at 183. Thus, the burden of persuasion on a party claiming improper joinder is a "heavy one." *Campbell*, 509 F.3d at 669 (citation omitted).   The focus of the improper joinder inquiry must be "on the joinder, not the merits of the plaintiff's case."  *Smallwood*, 385 F.3d at 573.

---

[6] In its reply brief, Plaintiff cited a recent Louisiana appellate court decision which stated that the Commissioner was effectively a party to the action.  *State ex rel. Tureau v. BEPCO, L.P.*, ____ So.3d ____, 2021 WL 1997498, *11 (La. App. 1st Cir. May 19, 2021).   Be that as it may, the stray language from *Tureau* constitutes *dicta* from an intermediate state court, and, thus, is neither governing, nor probative.

There are two ways to establish improper joinder:    "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."    *Smallwood, supra* (citing *Travis v. Irby*, 326 F.3d 644, 646-647 (5th Cir. 2003)).    In the case *sub judice*, there are no allegations of actual fraud. Accordingly, the court must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [the non-diverse/non-consenting] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [that] defendant."    *Id*.    Thus, "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder."    *Id*. (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4. (5th Cir. 2000)).

In so settling on the phrasing of the proof required of removing defendants to establish improper joinder, the Fifth Circuit, sitting *en banc*, expressly rejected all other formulations, whether they appeared to describe the same standard or not.    *Id*.    In fact, the Fifth Circuit's *Smallwood* opinion is *the* authoritative source of this circuit's improper-joinder analysis.    *Int.'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016) ("*IEVM*") (citations omitted).    Accordingly, the court cannot give effect to Plaintiff's argument, premised upon decisions by other Fifth Circuit panels, that purports to construe the improper joinder test to require proof that plaintiff is unable to establish a *cause of action* against the non-diverse/non-consenting defendant.    *See e.g., McDonal,* 408 F.3d at 183.[7]

The court may resolve whether plaintiff has a possibility of recovery against the non-

---

[7]    Another case cited by Rich Land was *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 307 (5th Cir. 2005), which Plaintiff denoted as an *en banc* decision.    *See* Pl. M/Remand, Memo., pg. 9 n.45.    *Guillory*, however, was a panel opinion.    *Guillory, supra*.

9

diverse/non-consenting defendants in one of two ways:   1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the non-diverse defendant under state law (FED. R. CIV. P. 12(b)(6) analysis);[8] or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, 385 F.3d 573.   However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse/non-consenting] defendant." *Id.*[9]   In the process, the court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis*, 326 F.3d at 649.   Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.*   If the removing defendant fails to establish improper joinder, then diversity is not complete and remand is required. *Id.*

Here, removing defendants argue that, after piercing the pleadings and conducting a summary inquiry, Rich Land has no reasonable basis of recovery against the non-diverse and/or non-consenting defendants because these entities are irrelevant, non-existent, and/or defunct with no assets, thereby precluding any reasonable possibility that Rich Land will be able to recover against them.

The legal status of a corporation is governed by state law. *Vill. of Montpelier v. Riche,*

---

[8]   To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations [in the plaintiff=s petition] must be enough to raise a right to relief above the speculative level," which means that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

[9]   In other words, facts that can be easily disproved if not true. *Id.*

*Chenevert & Andress Const. Co., Inc.*, 43 B.R. 736, 738 (M.D. La. 1984) (citing *inter alia*, *Gould v. Brick*, 358 F.2d 437 (5th Cir. 1966). The courts are split on whether a plaintiff has a reasonable possibility of recovery against an inactive corporation. For example, in *Beall v. Conoco Phillips Co.*, the court found that an inactive corporation was *not* improperly joined where removing defendant offered no evidence that the corporation had been dissolved, and where there were questions surrounding how the business came to an end. *Beall v. Conoco Phillips Co.*, Civ. Action No. 08-0289, 2008 WL 2433579, at *3 (M.D. La. June 16, 2008). The court further noted that revocation of a corporation's articles of incorporation did not affect any cause of action against the corporation. *Id.* (citing La. R.S. § 12:163(G)).

On the other hand, in *Weinstein v. Conoco Phillips*, the court held that plaintiff had no reasonable possibility of recovery against a corporation that had had its charter revoked for failure to file required annual reports. *Weinstein v. Conoco Phillips*, Civ. Action No. 13-919, 2014 WL 868918, at *1 (W.D. La. Mar. 5, 2014) (Haik, J.). In *Weinstein*, removing defendant adduced evidence that the non-diverse corporation had ceased operations some 24 years earlier, that it owned no property, had no office, business records, assets, or employees, and its principals were deceased. *Id.* The court was satisfied that the corporation had no existence of any kind and that its joinder constituted no more than a "mere theoretical possibility," which did not preclude a finding of improper joinder. *Id.*[10]

As stated earlier, the Monroe Division of this Court has had several opportunities to

---

[10]   Relying on *Weinstein*, Magistrate Judge Kay reached the same result in *Morgan Plantation, Inc. v. Tennessee Gas Pipeline Co., LLC*, Civ. Action No. 16-1620, 2017 WL 1180995, at *2 (W.D. La. Feb. 8, 2017), *R&R adopted*, 2017 WL 1181512 (W.D. La. Mar. 28, 2017); *see also Ashley v. Devon Energy Corp.*, Civ. Action No. 14-512, 2015 WL 803136 (M.D. La. Feb. 25, 2015) (relying on *Weinstein* to find that there was no reasonable possibility of recovery against a defunct corporation).

consider whether a plaintiff enjoys a reasonable possibility of recovery against defunct corporations. For instance, in *Lowry v. Total Petrochemicals & Refining USA, Inc.*, Judge Doughty held that six non-diverse defendants were improperly joined because their corporate status had been revoked decades ago (with the exception of one party which had its corporate status revoked in 2014), and the removing defendant was "unable to locate a business address, assets, employees, officers, directors, or any evidence of any business activity" by the entities since revocation. *Lowry v. Total Petrochemicals & Ref. USA, Inc.*, Civil Action No. 18-0864, 2018 WL 5931146, at *1 (W.D. La. Oct. 26, 2018), *R&R adopted,* 2018 WL 5931111 (W.D. La. Nov. 13, 2018).

In *Green v. BP Am. Prod. Co.,* Judge Doughty again determined that three non-diverse defendant corporations were inactive, non-existent, and, therefore, improperly joined where they had been incorporated decades ago, last filed their annual report decades ago, had their corporate charters revoked decades ago, and had several wells orphaned and entered into the Louisiana Oilfield Site Restoration Program ("OSR"). *See Green v. BP Am. Prod. Co.*, Civ. Action No. 18-0888, 2018 WL 5931148, at *6 (W.D. La. Oct. 26, 2018), *R&R adopted,* 2018 WL 5931114 (W.D. La. Nov. 13, 2018).

Conversely, in *Locust Ridge Plantation, L.L.C. v. Adco Producing Co., Inc.*, Judge James ultimately found that removing defendants had *not* established that defunct Louisiana corporations were improperly joined where there was no evidence regarding assets, property, employees, an office, or the like, and where less than three years had elapsed since the date that one of the corporations had *voluntarily* dissolved. *Locust Ridge Plantation, L.L.C. v. Adco Producing Co., Inc.*, Civ. Action No. 17-0746, 2017 WL 6045967 (W.D. La. Oct. 11, 2017), *R&R adopted*, 2017 WL 6045454 (W.D. La. Dec. 5, 2017).

In this case, however, removing defendants *have* adduced evidence to establish that

Plaintiff possesses no more than a theoretical possibility of recovery against the eleven non-diverse and/or non-consenting defendants.   The circumstances of each entity's status is summarized below.

a)  <u>BLSW</u>

BLSW was incorporated in Louisiana in 1971, filed its last report with the Louisiana Secretary of State in 1975, and had its corporate status revoked in 1982 for failure to file an annual report for three consecutive years.   (LA Secy. of State Docs; Notice of Removal, Exh. E, pgs. 1-8).   Moreover, removing defendants researched and endeavored to uncover signs of existence from this entity, but were unable to locate a business address, office space, employees, property, or other assets of the company.   (Declaration of Elizabeth Nelson; Defs. Opp. Memo., Exh. A).   Furthermore, BLSW has no website, Facebook page, or other similar presence on the internet.  *Id.*   BLSW's president was Glen D. Loe of Olla, Louisiana, who passed away in 1985. (Notice of Removal, Exh. E, pg. 8 and Defs. Opp. Memo., Exh. A-1).   Loe was survived by his son, Shelby H. Loe, Sr. of Tullos, Louisiana.   *Id.*; *see* discussion, *infra*.

b)  <u>Bryson</u>

Bryson was incorporated in Louisiana in 1983, filed its last report with the Louisiana Secretary of State in 1984, and had its corporate status revoked in 1990, for failure to file an annual report for three consecutive years.   (LA Secy. of State Docs; Notice of Removal, Exh. F, pgs. 9-18; *see also* Declaration of P.J. Stakelum, III; Defs. Opp. Memo., Exh. B).   While P. J. Stakelum, III, is listed as the registered agent and director for Bryson with the Louisiana Secretary of State, he is not aware of Bryson conducting any operations since 1990 – more than thirty years ago.   (Stakelum Decl.).   In addition, he could not identify any property, bank accounts, or other assets owned by Bryson.   *Id.*   He also remained unaware of any web

presence, office space, or persons employed by Bryson.  *Id.*  Finally, he could not point out any instances of Bryson changing its name, merging with, or being acquired by another entity.  *Id.*

    c) <u>Cuatro</u>

Cuatro was a Louisiana partnership that was formed in 1984 with three partners who were domiciled in this State:   H. J. DeBray, John C. Myers, and Custer K. Primos.   (LA Secy. of State Docs; Notice of Removal, Exh. G, pgs. 19-41).   While the Louisiana Secretary of State lists Cuatro's status as "active," Cuatro's Articles of Partnership specified that the partnership expired as of December 31, 2000, unless all partners agreed to extend the term of the partnership. *Id.*, pg. 26.[11]   Removing defendants researched and endeavored to uncover signs of existence from this entity, but were unable to locate a business address, office space, employees, property, or other asset of the partnership.   (Declaration of Elizabeth Nelson; Defs. Opp. Memo., Exh. A). Furthermore, Cuatro has no website, Facebook page, or other similar presence on the internet. *Id.*   Removing defendants also showed that there was no evidence of business activity or operations by Cuatro since December 31, 2000.   *See* Nelson Decl., *supra*.   This evidence supports the finding that the partnership terminated by its terms as of that date.[12]

---

[11] A partnership terminates upon expiration of its term and/or in accordance with the provisions of the contract of partnership.   LA. CIV. CODE ART. 2826.   Further, "[w]hen a partnership terminates, the business of the partnership ends except for purposes of liquidation."   LA. CIV. CODE ART. 2828.

[12] Plaintiff has not sought an order directing liquidation or judicial appointment of a liquidator. *See* LA. CIV. CODE ART. 2834.   In any event, removing defendants' evidence that they were unable to discover any assets still owned by the partnership some 20 years after its dissolution, confirms that there is nothing of value to liquidate.

d)  Equitable

Equitable was incorporated in Delaware in 1968, filed its last report with the Louisiana Secretary of State in 1997, and had its corporate status revoked in 2000 for failure to file an annual report for three consecutive years.   (LA Secy. of State Docs; Notice of Removal, Exh. H, pgs. 42-47).   Moreover, removing defendants researched and endeavored to uncover signs of existence from this entity, but were unable to locate a business address, office space, employees, property, or other assets of the company.   (Nelson Declaration; Defs. Opp. Memo., Exh. A).[13] Furthermore, Equitable has no website, Facebook page, or other similar presence on the internet. *Id*.

e)  Lo-Ho-Fi

Lo-Ho-Fi was incorporated in Louisiana in 1971, filed its last report with the Louisiana Secretary of State in 1975, and had its corporate status revoked in 1982 for failure to file an annual report for three consecutive years.   (LA Secy. of State Docs; Notice of Removal, Exh. I, pgs. 48-56).   Moreover, removing defendants researched and endeavored to uncover signs of existence from this entity, but were unable to locate a business address, office space, employees, property, or other assets of the company.   (Nelson Declaration; Defs. Opp. Memo., Exh. A). Further, Lo-Ho-Fi has no website, Facebook page, or other similar presence on the internet.   *Id*. Lo-Ho-Fi's president was Glen D. Loe of Olla, Louisiana, who passed away in 1985.   *See*

---

[13] Equitable's mailing address, principal business office, registered office in Louisiana, *and* principal business establishment in Louisiana all are listed as 3500 N. Causeway Boulevard, Suite 410, Metairie, LA, which now appears to be occupied by United States Customs and Border Protection.   (Defs. Opp. Memo., Exh. C).

Notice of Removal, Exh. E, pg. 56 and Defs. Opp. Memo., Exh. A-1.   Loe was survived by his

son, Shelby H. Loe, Sr. of Tullos, Louisiana.   *Id.*[14]

    f)   Loe Oil

    Loe Oil was incorporated in Louisiana in 1974, filed its last report with the Louisiana

Secretary of State in 1975, and had its corporate status revoked in 1982 for failure to file an

annual report for three consecutive years.   (LA Secy. of State Docs; Notice of Removal, Exh. J,

pgs. 57-66).   Moreover, removing defendants researched and endeavored to uncover signs of

existence from this entity, but were unable to locate a business address, office space, employees,

property, or other assets of the company.   (Nelson Declaration; Defs. Opp. Memo., Exh. A).

Further, Loe Oil has no website, Facebook page, or other similar presence on the internet.   *Id.*

Loe Oil's registered agent was Lewis Sleeth, who passed away in 2016.   *See* Notice of Removal,

Exh. J, pg. 57 and Defs. Opp. Memo., Exh. A-3.[15]

    g)   Marlog

    Marlog was incorporated in Louisiana in 1964, and voluntarily dissolved in 1970.   (LA

Secy. of State Docs; Notice of Removal, Exh. K, pgs. 67-80).   Louisiana law provides a

procedure for a dissolved corporation to publish notice of its dissolution, so persons with claims

against the dissolved corporation may present them in accordance with the notice.   LA. R.S. §

12:1-1407(A).   Once notice is properly promulgated, interested claimants have three years in

---

[14]   The court notes that citation was issued and delivered to Shelby H. Loe, Sr.   However, Shelby H. Loe, Sr. was not a registered agent, officer or director for Lo-Ho-Fi, according to the Secretary of State's records.   (LA Secy. of State Docs; Notice of Removal, Exh. I, pgs. 48-56).

[15]   This circumstance tends to undermine Plaintiff's representation that Loe Oil was served via its agent, Lewis Sleeth, on March 15, 2021.   *See* doc.# 1-37, pg. 3.

which to commence a proceeding to enforce a claim against the dissolved corporation.   LA. R.S. § 12:1-1407(C).   A timely filed claim may be enforced, *inter alia*, against the dissolved corporation, to the extent of its undistributed assets.   La. R.S. § 12:1-1407(D).

On September 1, 1970, Marlog duly promulgated its notice of liquidation in the Shreveport Times.   (LA Secy. of State Docs; Notice of Removal, Exh. K, pgs. 67-80). However, there is no indication that Rich Land timely commenced suit against Marlog. Furthermore, removing defendants have adduced evidence that Marlog has no surviving property or assets to satisfy a judgment.   *See* Nelson Declaration; Defs. Opp. Memo., Exh. A); *contrast Locust Ridge, supra*.

h)  Quad

Quad was incorporated in Louisiana in 1946, filed its last report with the Louisiana Secretary of State in 1994, and had its corporate status revoked in 1998 for failure to file an annual report for three consecutive years.   (LA Secy. of State Docs; Notice of Removal, Exh. L, pgs. 81-90).   Moreover, removing defendants researched and endeavored to uncover signs of existence from this entity, but were unable to locate a business address, office space, employees, property, or other asset of the company.   (Nelson Declaration; Defs. Opp. Memo., Exh. A). Furthermore, Quad has no website, Facebook page, or other similar presence on the internet.   *Id*. Quad's president was William J. Sneed who passed away in 2001.   *See* Notice of Removal, Exh. L, pg. 82 and Defs. Opp. Memo., Exh. A-4.

i) <u>S. H. Loe Oil</u>

Plaintiff sued S. H. Loe Oil as "successor to interest by merger, acquisition and/or name change to Loe Oil & Gas Corporation and Glen D. Loe, Inc. . . . ." (Petition, ¶ 4(L)).[16] S. H. Loe Oil was incorporated in Louisiana in 1986 and remains active and in good standing according to the Louisiana Secretary of State. (LA Secy. of State Docs; Notice of Removal, Exh. M, pgs. 91-100). However, removing defendants adduced evidence that, pursuant to a search of the conveyance and mortgage records for the Parishes of Richland and Morehouse, S. H. Loe Oil never owned any recorded interest in the three tracts of land that formed the basis for this lawsuit. (Declaration of Martin Mouton; Notice of Removal, Exh. O, pgs. 110-111). A search of the same conveyance and mortgage records also uncovered no recorded lease, deed, assignment, agreement, or other document between S. H. Loe Oil and Loe Oil & Gas Corporation or Glen D. Loe, Inc. *Id*. Review of the Strategic Online Natural Resources Information System ("SONRIS") for wells operated at the three tracts of land revealed that S. H. Loe Oil was not and is not an operator of record for any of the wells on the three tracts of land at issue in this suit. *Id*.

The court notes that Shelby H. Loe, Sr. is listed as president of S. H. Oil and also was president of Glen D. Loe, Inc. Furthermore, Shelby H. Loe, Sr.'s father, Glen D. Loe, was involved with some of the other defunct companies. However, these other entities, e.g., Loe Oil, Lo-Ho-Fi, BLSW, and Glen D. Loe, Inc., all had their corporate statuses revoked by 1982,

---

[16] Plaintiff did not name Glen D. Loe, Inc. as a defendant in the suit. In any event, Glen D. Loe, Inc. was incorporated in Louisiana in 1971, filed its last report with the Louisiana Secretary of State in 1975, and had its corporate status revoked in 1982 for failure to file an annual report for three consecutive years. (LA Secy. of State Docs; Notice of Removal, Exh. N, pgs. 101-109).

whereas, S. H. Loe Oil was not incorporated until 1986. This conspicuous four-year gap between the revocation of these other entities and the creation of S. H. Loe Oil undermines Plaintiff's bare and conclusory allegation that S. H. Loe Oil merged with, acquired, or otherwise merely changed its name from these other entities.

In short, while removing defendants do not contend that S. H. Loe Oil is defunct or non-existent, they have adduced uncontroverted evidence to show that S. H. Loe Oil is not involved with or responsible for the injury suffered by Plaintiff herein.

j)   WG Gas I and WG Gas II

The lone managing member of the multiple WG Gas, LLC entities at issue here was/is Wesley Griffith, an Alabama citizen.   *See* MS Secy. of State Records; Notice of Removal, Exh. R., pgs. 130-134; *see also* Declaration of Katharine Griffith; Defs. Opp. Memo., Exh. D.   The initial WG Gas, LLC entity ("WG Gas I") was organized in Mississippi in May-July, 2011. (MS Secy. of State Records; Notice of Removal, Exh. Q, pgs. 130-131).   Shortly after it organized in Mississippi, WG Gas I registered to do business in Louisiana and entered into a mineral lease with Plaintiff on July 23, 2012.   (LA Secy. of State Records; Notice of Removal, Exh. Q, pgs. 122-129; Oil, Gas and Mineral Lease; Defs. Opp. Memo., Exh. E).

WG Gas I voluntarily dissolved effective March 1, 2013, and formally withdrew from the State of Louisiana on July 3, 2013, because it had ceased doing business in Louisiana as of February 1, 2013.   *See* MS and LA Secy. of State Records; Notice of Removal, Exhs. R & Q, pgs. 122-134.   In connection with his dissolution of the Mississippi-registered WG Gas I, Wesley Griffith re-registered WG Gas ("WG Gas II") as a Nevada limited liability company in March 2013.   *See* NV Secy. of State Records; Defs. Opp. Memo., Exh. G.   The insertion of WG

19

Gas II into the lease with Rich Land is evidenced by Plaintiff's executing a July 27, 2015 extension of the mineral lease with a "Nevada Limited Liability Company."  (Extension of Oil, Gas, and Mineral Lease; Defs. Opp. Memo., Exh. F).

However, the Louisiana Secretary of State revoked WG Gas II's s corporate status in July 2019, for failure to file an annual report for three consecutive years.  (LA Secy. of State Docs; Notice of Removal, Exh. P, pgs. 112-121).  Furthermore, as of April 1, 2021, the Nevada Secretary of State revoked WG Gas II's limited liability status for its failure to comply with its Annual Filing requirement for the period from March 2020 to March 2021.  *Id*.

Removing defendants also submitted a declaration from Katharine Griffith, the spouse of Wesley Griffith -- the lone member of both WG Gas entities.  (Declaration of Katharine Griffith; Defs. Opp. Memo., Exh. D).  She averred that Wesley Griffith was the operator and engineer that performed the day-to-day operations for WG Gas I and II.  *Id*.  However, because of a "diagnosed medical condition," Wesley Griffith has been unable to perform daily tasks, much less the work, operations, and activities that he once performed for WG Gas I and II.  *Id*. She explained that WG Gas I had not conducted any operations since it was dissolved in 2013, and WG Gas II had not conducted any operations in the past four years because of Wesley Griffith's medical condition.  *Id*.  She added that WG Gas I and II have no office space, employees, customers, property, bank accounts, funds, other assets, or a web presence.  *Id*.

In addition, Plaintiff's Operator History attached to the petition shows that all of WG Gas' former wells, with the exception of one that was never drilled, were placed in the Louisiana Oilfield Site Restoration Program ("OSR").  (Petition, Exh. B).  WG Gas' inclusion in the OSR program constitutes evidence that no responsible party could be located for these corporations, that they were failed entities, and/or that they were financially unable to participate in oilfield

cleanup operations.[17]

k)  Summation

Upon consideration, the court finds that, with the lone exception of S. H. Loe Oil, removing defendants have adduced undisputed evidence to establish that each of the non-diverse, non-consenting, and/or forum-domiciled corporations, partnership (i.e., Cuatro), and LLCs in this case do not have a business address, office space, employees, property, or other assets.   In other words, they are no longer going concerns.   While in some instances, Plaintiff managed to find a warm body upon whom they purported to effect service, that does not change the fact that these defunct entities have no property or assets, no matter how insignificant, to fund any portion of a judgment.   Therefore, removing defendants' evidence aligns this case with the decisions reached in *Weinstein*, *Morgan Plantation*, and *Ashley*.

As for S. H. Loe Oil, removing defendants established that it was not involved in the activity that formed the basis for this suit, nor is it a successor by merger, acquisition, or name change of the other plausibly responsible, but defunct entities.

Furthermore, with the exception of S. H. Loe Oil, *see* above; WG Gas I, which voluntarily dissolved in 2013; and WG Gas II, which had its corporate status revoked in 2021, all of the other corporate entities had their articles of incorporation revoked/dissolved 20 or more years before this suit was filed.   Under the law as it existed at that time,[18] a corporation could

---

[17]  Pursuant to the OSR, the assistant secretary for the Office of Conservation may declare an oilfield site to be orphaned only upon a finding that "[n]o responsible party can be located, or such party has failed or is financially unable to undertake actions ordered by the assistant secretary . . ."   LA. R.S. § 30:91(A)(1).

[18]  In 2015, the Louisiana legislature repealed the Business Corporation Law, Louisiana Revised Statute '' 12:1 *et seq*., and replaced it with the Business Corporation Act, Louisiana Revised Statute '' 12:1-101 *et seq*., modeled after the Model Business Corporation Act.   The repeal and replace was made effective January 1, 2015.   Accordingly, the Business Corporation Law applies where, as here, the Secretary of State revoked a corporation's articles of incorporation

apply for reinstatement of its articles of incorporation within three years from the effective date of the revocation.   *See* former LA. R.S. § 12:163(E)(1)(c).   Here, of course, none did.

Although revocation of a corporation's articles of incorporation does not affect any cause of action against the corporation,[19] in the absence of the corporation's reinstatement, any action brought against the corporation must be brought against a liquidator appointed in accordance with Louisiana Revised Statute § 12:1-1445.   *See* LA. R.S. § 12:1-1443(E) and former § 12:143(G).   Given the evidence demonstrating the absence of any employees and assets for any of the defunct, non-diverse/non-consenting corporations, plus the expiration of time for reinstatement of the corporations,[20] any claims against the defunct corporations were required to be brought against a liquidator(s).   Plaintiff did not seek appointment of a liquidator(s) prior to filing suit.   Regardless, the terminated and un-reinstated corporations are not proper parties to this suit.

The record suggests that WG Gas II succeeded the interests of WG Gas I.   *See* discussion, *supra*.   Moreover, the court does not question that Plaintiff has a potential *cause of action* against WG Gas II.   The dispositive consideration, however, is that removing defendants have shown that WG Gas II (and WG Gas I) have no office space, no employees, no customers, no property, no bank accounts, no funds, and no other assets.   In the absence of funds or assets, any judgment pursued against these parties is a vain exercise in futility that appears principally calculated to thwart removal jurisdiction.   If the notion of a nominal party means anything at all,

---

prior to the effective date of the Business Corporation Act.   *See In re Krebs Lasalle Lemieux Consultants, Inc.*, 215 So. 3d 939, 941 (La. App. 5th Cir. 2017).

[19]   *See* LA. R.S. ' 12:163(G) and LA. R.S. ' 12:1-1443(C).

[20]   In June 2017, the legislature revised ' 12:1444 to extend the period for reinstatement from three years to five years.   *See* 2017 La. Sess. Law Serv. Act 57 (H.B. 310).

the court can conceive of few better examples than WG Gas I and II and the other defunct entities in this case against whom Plaintiff has no reasonable possibility of recovery.[21]

In sum, the undersigned finds that removing defendants have established that Plaintiff has no reasonable possibility of recovery against the non-diverse, non-consenting Defendants, and consequently, they remain but nominal parties whose presence must be disregarded for purposes of subject matter and removal jurisdiction.    Having determined that Plaintiff improperly joined Defendants, BLSW; Bryson; Cuatro; Equitable; Lo-Ho-Fi; Loe Oil & Gas; Marlog.; Quad; S. H. Loe; WG Gas I; and WG Gas II, the court necessarily lacks jurisdiction to entertain the suit against them, thereby requiring their dismissal, without prejudice.    *IEVM, supra* ("the dismissal of a nondiverse party over whom the court does not have jurisdiction must be a dismissal without prejudice in every instance.").[22]

The remaining parties are completely diverse, with no forum-domiciled defendant, and with all three properly served and joined Defendants' having timely joined in removal.

---

[21]    In its motion, Plaintiff argued that if it were to succeed in obtaining a judgment against a defunct or terminated entity, then it could look to any insurers for payment.    However, where, as established here, the insureds are insolvent, *see* discussion, *supra*, then, by law, plaintiff is permitted to proceed against the insurers alone.    *See* LA. R.S. ' 22:1269(B)(1)(b).

Plaintiff further stated that it already has identified two insurers of policies maintained by WG Gas I and II, and that if it were to proceed directly against these insurers, then they will be deemed citizens of the same State as their insureds pursuant to 28 U.S.C. § 1332(c).    Thus far, however, Plaintiff only has identified insurers for WG Gas I and WG Gas II, which are Alabama citizens.    *See* discussion, *supra*.    Therefore, joinder of these two insurers will not compel remand – as least based on the citizenship of their insureds.    Whether Plaintiff will identify and seek to join an insurer for a defunct, *non-diverse* defendant remains speculative and is not presently before the court.

[22]    Of course, "[a]s the claim or claims against the [improperly joined] defendant[s] must be dismissed without prejudice, the plaintiff is not barred by *res judicata* from refiling those claims in state court if [it] so desires."    *IEVM*, 818 F.3d at 202 n.25.

Accordingly, the court may exercise subject matter and removal jurisdiction.   28 U.S.C. " 1332 and 1441.

<u>**Conclusion**</u>

For the above-assigned reasons,

IT IS RECOMMENDED that Plaintiff's motion to remand [doc. # 12] be DENIED.

IT IS FURTHER RECOMMENDED that Plaintiff's claims against Defendants, BLSW Pleasure Corporation; Bryson Oil & Gas, Inc.; C H Cuatro; Equitable Petroleum Corporation; Lo-Ho-Fi Corporation; Loe Oil & Gas Corporation; Marlog, Inc.; Quad Drilling Corporation; S. H. Loe Oil Corporation; WG Gas LLC; and WG Gas, LLC, be DISMISSED, without prejudice.

IT IS FURTHER RECOMMENDED that Plaintiff's claims brought as relator on behalf of the State of Louisiana and the Commissioner of Conservation be DISMISSED, without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 29th day of July, 2021.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

25