UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

RICH LAND SEED CO., INC., ET AL.          CIV. ACTION NO. 3:21-01070

VERSUS                                    JUDGE TERRY A. DOUGHTY

BLSW PLEASURE CORP., ET AL.               MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions to dismiss filed by Defendants, Chevron Pipe Line Company ("Chevron") [doc. # 47] and Marathon Oil Company ("Marathon") [doc. # 53], which seek to dismiss certain claims of Plaintiff, Rich Land Seed Company ("Rich Land"), pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The motions are opposed. [doc. # 61]. For reasons explained below, it is recommended that the motions be GRANTED IN PART and DENIED IN PART.

## Background

On March 9, 2021, Plaintiff Rich Land filed the instant oilfield contamination a/k/a "legacy" lawsuit[1] on its own behalf, and as relator on behalf of the State of Louisiana and the Commissioner of Conservation,[2] in the Fifth Judicial District Court for the Parish of Richland,

---

[1] "These types of actions are known as 'legacy litigation' because they often arise from operations conducted many decades ago, leaving an unwanted 'legacy' in the form of actual or alleged contamination." *Marin v. Exxon Mobil Corp.*, 48 So.3d 234, 239 n.1 (La. 2010) (citation omitted).

[2] Rich Land appears herein and seeks recovery in one or more of the following capacities:

(1) Lessor, assignee, or third-party beneficiary of certain mineral and/or surface leases between plaintiff and defendants;
(2) successor in interest to certain mineral and/or surface leases between plaintiff and defendants;

State of Louisiana against fourteen named Defendants, plus an unknown insurance company,[3] arising out of decades-long oil and gas exploration and production activities conducted on Rich Land's property by the Defendants and/or their predecessors.    (Petition).[4]    Specifically, Rich Land alleged that it is the owner of three tracts of land in Richland and Morehouse Parishes (sometimes referred to as "the Property") that Defendants, or their predecessors-in-interest, contaminated or otherwise damaged via their oil and gas exploration and production activities, which included the construction, and subsequent abandonment of wells, sumps, flowlines, pipelines, tank batteries, wellheads, and unlined earthen pits.    (Petition).    Rich Land asserted a comprehensive compilation of theories of recovery against Defendants and seeks to recover compensatory, punitive, and/or exemplary damages associated with restoring the lands to their

---

(3) owner of property contaminated by the oil and gas activities conducted or controlled by one or more of the defendants;

(4) successor in interest to, or the assigns of, the owners of Property contaminated by the oil and gas activities conducted or controlled by one or more of the defendants;

(5) servitude owner who has the right to sue for remediation damages under the Mineral Code; and

(6) parties who possess the right of action to file this lawsuit under Louisiana law.

(Petition, ¶ 3).

[3]  Made Defendants were   BLSW Pleasure Corporation; Bryson Oil & Gas, Inc.; C H Cuatro; Chevron; City of Memphis Light, Gas & Water Division, Inc. (more properly identified as Memphis Light, Gas & Water) ("Memphis"); Equitable Petroleum Corporation; Lo-Ho-Fi Corporation; Loe Oil & Gas Corporation; Marathon; Marlog, Inc.; Quad Drilling Corporation; S. H. Loe Oil Corporation; WG Gas LLC; WG Gas, LLC; and ABC Insurance Company. (Petition, ¶ 4).   On October 13, 2021, Rich Land amended its complaint to join additional Defendants, Hallmark Specialty Insurance Company and Markel Insurance Company.   [doc. #s 33, 37-38].

[4] Several documents are attached to the Petition, including aerial photographs that show the locations of the wells on the property, an "Operator History" that lists the operators of the wells at issue and dates of operations, and a "Lease Abstract" that lists all known leases and other agreements that affect the property.   *See* Petition, ¶ 5 (explaining and incorporating the attached Exhibits A-D).

original, unpolluted state, the diminution of property value, and resulting stigma.    *See* Petition, Prayer.    Rich Land also seeks injunctive and equitable relief, plus an award of attorney's fees. *Id*.

On April 21, 2021, Defendants, Memphis, Marathon, and Chevron, removed the suit to federal court on the sole basis of diversity jurisdiction, 28 U.S.C. § 1332.    (Notice of Removal). On May 21, 2021, Rich Land filed a motion to remand, which the court ultimately denied, and, in so doing, dismissed the claims brought by Rich Land as relator on behalf of the State of Louisiana and the Commissioner of Conservation, plus Rich Land's claims against Defendants, BLSW Pleasure Corporation; Bryson Oil & Gas, Inc.; C H Cuatro; Equitable Petroleum Corporation; Lo-Ho-Fi Corporation; Loe Oil & Gas Corporation; Marlog, Inc.; Quad Drilling Corporation; S. H. Loe Oil Corporation; WG Gas LLC; and WG Gas, LLC.    [doc. #s 16-18].

On November 16 and December 1, 2021, Chevron and Marathon, respectively, filed the instant motions, apparently seeking partial dismissal of Rich Land's petition/complaint, as amended, for failure to state a claim upon which relief can be granted.    Rich Land filed an omnibus opposition to all pending motions to dismiss[5] on January 12, 2022.    [doc. # 61]. Chevron and Marathon filed reply briefs in support of their motions on February 8 and 9, 2022. [doc. #s 64, 66].    Rich Land filed a sur-reply on February 17, 2022.    [doc. # 72]. Accordingly, the matter is ripe.

### Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."    FED. R. CIV. P. 12(b)(6).    A pleading states a claim

---

[5] Two other Defendants, Transco Exploration Company and Memphis, also filed motions to dismiss for failure to state a claim upon which relief can be granted.    [doc. #s 51 & 54]. However, the court has deferred consideration of these motions whilst these parties attempt to finalize a proposed confidential settlement agreement with Rich Land.    *See* doc. #s 73-74.

for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989). Furthermore, "a complaint may be dismissed if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation marks omitted).

4

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [its] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011) (citing C. WRIGHT & A. MILLER, FED. PRAC. & PROC., § 1219, pp. 277-78 (3d ed. 2004 and Supp. 2010)). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

Finally, when considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

5

## Discussion[6]

Both Chevron and Marathon seek dismissal of eleven common claims, theories of recovery, and/or forms of damages.    However, Marathon's motion encompasses four additional claims:    fraud; § 324A of the Restatement (Second) of Torts; continuing tort, continuing trespass, and continuing nuisance; and third-party beneficiary.    Even though Chevron did not seek dismissal of these additional claims, given Rich Land's "group pleading," the court will treat the motion as if it had.    *See Lewis v. Lynn*, 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (where defending party establishes that plaintiff has no cause of action, the defense generally inures to the benefit of a non-appearing co-defendant).[7]    Because Marathon's motion is the more comprehensive submission, the court, with one exception, will discuss the issues in the order that they appear in Marathon's brief.

According to Marathon, the only allegations linking it to Rich Land's cause of action are

---

[6] This court is no stranger to the issues raised by the instant motions.    In *Watson v. Arkoma,* Magistrate Judge Hayes issued a report and recommendation that addressed many of the same arguments that were raised by at least some of the same law firms who appear in this case.    *See Watson v. Arkoma Dev., LLC*, Civ. Action No. 17-1331 (W.D. La.) [doc. # 48].    Judge Doughty adopted the report and recommendation, without objection.    *Id*. [doc.# 49].    Accordingly, where appropriate, the undersigned will borrow freely from this court's prior decision on the same subject matter.    In addition, other federal courts in this state have weighed-in on these same issues.    *See, e.g., Alford v. Chevron U.S.A. Inc.*, 13 F.Supp.3d 581, 588 (E.D. La. 2014), *order amended on reconsideration* (June 4, 2014); *Prairie Land Co. v. ConocoPhillips Co.*, Civ. Action No. 20-0748, 2020 WL 5647300 (W.D. La. Sept. 22, 2020); *Levet v. Exxon Mobil Corp.*, Civ. Action No. 15-2069, 2015 WL 9685555 (W.D. La. Nov. 19, 2015), *R&R adopted,* 2016 WL 112678 (W.D. La. Jan. 8, 2016); *Ritchie Grocer Co. v. 2H, Inc.*, Civ. Action No. 14-2868, 2015 WL 9589890 (W.D. La. Sept. 16, 2015), *R&R adopted,* 2015 WL 9587538 (W.D. La. Dec. 30, 2015); *Tureau v. 2H, Inc.*, Civ. Action No. 13-2969, 2015 WL 4694072 (W.D. La. Aug. 6, 2015); *Guilbeau v. Hess Corp.*, Civ. Action No. 14-2867, 2015 WL 2353508 (W.D. La. Apr. 2, 2015).

[7] The instant report and recommendation provides adequate notice to the parties.    *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998)).

6

found in the "Operator History" attached to the Petition, which provides that Marathon's alleged predecessor, Transcontinental Oil Company, operated two wells on the subject property one-hundred years ago, between 1920 and 1924:   the Chess-Wymond #1 (Serial No. 2462) that was plugged and abandoned in 1922, and the Chess-Wymond #2 (Serial No. 7642) that was drilled as a dry hole in 1924.   (Petition, Exh. B, Operator History, pg. 1 [doc. # 1-4]).

According to Chevron, the "Operator History" indicates that its alleged predecessor is Gulf Refining Company of Louisiana, which operated two wells on the subject property between 1927 and 1928:   the Chess & Wymond # A-1 (Serial No. 11631), which was a dry hole, and the Chess Wymond Company #1 (Serial No. 11393), which was plugged and abandoned less than one year after it was completed.   (Petition, Exh. B, Operator History, pgs. 3, 5 [doc. # 1-4]).

With this background, the court will proceed to consider the raised issues, seriatim.

## I.    Fraud

Marathon seeks dismissal of Rich Land's *claims* for fraud or concealment[8] because Rich Land failed to state with particularity the circumstances constituting fraud or mistake as required by Rule 9(b) of the Federal Rules of Civil Procedure.   The particularity demanded by Rule 9(b) supplements Rule 8(a)'s pleading requirement.   *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).   Allegations of fraud under Louisiana law[9] asserted in a case removed

---

[8]  The court does not read Marathon's motion as seeking dismissal of fraud-like allegations that help support other claims distinct from a formal claim for contractual or delictual fraud itself. Indeed, when fraud-like allegations are used for purposes of supporting other claims, "[t]he proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated."   *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).

[9]  Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.   *Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).   Here, all parties

to federal court implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).    *See Cougle v. Berkshire Life Ins. Co. of Am.*, 429 F.Supp.3d 208, 212 (E.D. La. 2019) (when a case is removed to federal court, the law is clear that federal pleading requirements apply) (citing *Genella v. Renaissance Media*, 115 Fed. App'x 650, 652-53 (5th Cir. 2004)); *see also* FED. R. CIV. P. 81(c) ("These [Federal Rules of Civil Procedure] apply to a civil action after it is removed from a state court."); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016) (applying Rule 9(b) to analyze the sufficiency of a fraud claim pursuant to a Rule 12(b)(6)-type analysis in a removed case).

Nonetheless, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).    What constitutes sufficient particularity for Rule 9(b) varies with the facts of each case.    *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).    At minimum, however, Rule 9(b) requires a plaintiff pleading fraud to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."    *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002) (quoted sources and internal quotation marks omitted).    However, the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)."    *Grubbs*, 565 F.3d at 190.    Further, to adequately plead fraud by silence, Louisiana courts generally require plaintiffs to allege with reasonable particularity:

---

analyzed Rich Land's claims pursuant to Louisiana law.    Therefore, they implicitly agree that the disputed issues are governed by the substantive law of Louisiana.    *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied).    To determine Louisiana law, federal courts look to the final decisions of the Louisiana Supreme Court.    *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citation omitted).

"(1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information." *Levet, supra* (citations omitted).

Rich Land contends that its pleading satisfies the particularity requirement because it affirmatively alleges that

> defendants chose to conceal and cover up their contamination . . . defendants failed to inform or warn plaintiff or its predecessors concerning the extent, nature, cause, and origin of this pollution . . . [and] [d]efendants knew and failed to disclose to plaintiff or its predecessors that their wastes would not degrade or break down in the environment in the foreseeable future and that their presence in the subsurface would constitute an ongoing source of pollution and environmental damage for generations.

(Rich Land Opp. Memo., pg. 43 (quoting Petition, ¶¶ 12-13)).    However, courts routinely have held that the foregoing allegations of fraud are deficient because they fail to identify when the allegedly fraudulent conduct took place and do not "distinguish among . . . defendant[s] . . . [or] set forth each defendant's responsibility for the allegedly fraudulent activities." *See, e.g.*, *Alford*, 13 F.Supp.3d at 594 (citations omitted); *Watson, supra* ("group pleading" does not suffice under Rule 9(b)); *Prairie Land Co.*, *supra*; *Levet, supra*; *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (fraud claim not stated under Rule 12(b)(6) and 9(b) where no facts alleged to show how it was incumbent upon defendant, which never had any dealings with plaintiffs, to disclose any information to them at all, nor how defendant should have done so).

Accordingly, the court finds that Rich Land fails to state a claim for fraud with sufficient particularity.[10]

---

[10] Of course, Rich Land may seek leave to amend its complaint to detail his claim with sufficient

9

## II.    Restatement (Second) of Torts § 324A

Rich Land alleged in its petition that "defendants are liable to plaintiff under the provisions of Section 324A of the Restatement 2d, as interpreted by Louisiana jurisprudence. Under Section 324A, one or more of the defendants assumed duties owed by others to the plaintiff to protect plaintiff and its Property from contamination and harm."    (Petition, ¶ 16).

Louisiana courts recognize the common law "Good Samaritan Doctrine" codified in the Restatement (Second) of Torts § 324A, which provides that

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [perform] his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Bujol v. Entergy Servs., Inc.*, 922 So. 2d 1113, 1128 (La. 2004) (quoting Restatement (Second) of Torts § 324A). This doctrine is typically "used to impose liability upon an actor who has failed to exercise reasonable care when it undertook to perform a duty owed to a third party." *Id.*

Marathon contends that Rich Land fails to state a "cause of action . . . for tort claims under § 324A" because it has not alleged that Marathon undertook to provide services for

---

particularity in response to the instant report and recommendation.  *See* discussion, *infra*.  If so, however, Rich Land still will need to ensure that it sets forth facts to support all of the elements of a fraud claim – a distinct issue that lies outside the scope of the present motion(s).  *See Tureau*, 2015 WL 4694072, at *5 (listing the elements of a fraud claim and plaintiff's failure to allege facts to support each of them).

another or that Marathon performed those services negligently.    (Marathon M/Dismiss, Memo., pg. 4).    Rich Land responded that "[a]s successors, defendants assumed obligations under applicable leases or contracts and had a duty to remedy the past wrongs of those parties for whose fault or obligations they are legally responsible."    (Pl. Opp. Brief, pg. 48).

Citing *Bujol, supra*, Judge James recognized that § 324A could support a claim for negligent undertaking, but the common law import required plaintiff to allege that "(1) the defendant 'undert[ook]' to render services, (2) to another, (3) which the defendant should [have] recognize[d] as necessary for the protection of a third person."    *Lucarelli ex rel. Taylor v. DVA Renal Healthcare Inc.*, Civ. Action No. 08-0406, 2009 WL 276526, at *1 (W.D. La. Feb. 2, 2009) (citations omitted).    In *Lucarelli*, however, plaintiff failed to allege that defendant undertook to provide a service to another for the protection of a third person.    *Id*.

Similarly, here, insofar as § 324A supports an independent claim for negligent undertaking,[11]  Rich Land has not alleged that Marathon (or Chevron) undertook to render services to Rich Land or to its predecessors.    Courts in this circuit have consistently dismissed a claim under § 324A on similar facts.    *See, e.g.*, *Watson, supra*; *Ritchie Grocer Co.*, *supra*; *Tureau v. 2H, Inc.*, *supra*; *Alford*, 13 F. Supp. 3d at 602-03.

---

[11]  The Louisiana Supreme Court has employed § 324A to impose a duty or to expand the scope of a duty within the parameters of the traditional duty/risk analysis that sprouts from the fountainhead of tort or delict law in Louisiana:   Civil Code Article 2315.   *See Bujol*, 922 So. 2d at 1129-1130, n.18 (noting that § 324A is used to establish duty or proximate cause); *Morvant v. Oil States Int'l, Inc.*, 3 F.Supp.3d 561, 565 (E.D. La. 2014) (in Louisiana, courts apply § 324A of the Restatement (Second) of Torts to determine whether defendants owe a duty); *Langlois v. Allied Chem. Corp.*, 258 La. 1067, 1077–78; 249 So.2d 133, 137 (1971) (Article 2315, *et seq.*, is the fountainhead of tort responsibility).   In other words, it is questionable whether § 324A creates a separate cause of action or independent theory of recovery, divorced from traditional Louisiana tort principles.

Accordingly, insofar as Rich Land endeavored to assert a standalone claim under Restatement (Second) of Torts § 324A, the petition fails to state a claim for relief.

## III.    Continuing Tort, Continuing Trespass, and Continuing Nuisance

Marathon contends that Rich Land fails to state a claim for continuing tort, continuing trespass, or continuing nuisance because the operating cause of the alleged injury is not continuous.[12]   Rich Land argues, however, that whether a tort is continuing or not, is an issue of prescription.   (Pl. Opp., pg. 49).   Indeed, "the continuing tort doctrine is used to determine 'when prescription starts to run,' but is not itself a tort."   *Patterson v. Fin. Asset Mgmt. Sys., Inc.*, Civ. Action No. 20-500, 2021 WL 3744190, at *8 (M.D. La. Aug. 24, 2021) (citations omitted).

The court does not read Rich Land's petition as attempting to set forth claims for continuing tort, trespass, or nuisance, distinct from the underlying tort, trespass, or nuisance claims themselves.   Accordingly, there are no continuing tort claims, etc.,[13]   subject to

---

[12]  Rich Land alleged in its petition that

> [d]efendants are also guilty of a tort and a trespass.   Defendants' acts or omissions, and their unlawful conduct, have caused successive damages and cumulatively increasing deterioration of plaintiff's Property.   The pollution caused by the defendants have migrated and will migrate in the future.   The cause of the increasing damages to plaintiff's land is the failure of defendants to remove their pollution from the Property.   The cause of the damages suffered by plaintiff thus give rise to successive damages.   In addition, defendants' conduct of their oil and gas exploration and production activities and the associated discharge, disposal or storage of oilfield waste on plaintiff's property have created an ongoing and damaging nuisance to plaintiff and plaintiff's Property.   Further, the presence of oilfield waste on the Property constitutes a trespass.   The migration of waste is causing an ever-increasing damage to plaintiff's Property, and such damage will exist until such time as the sources are identified, removed, and remediated.

(Petition, ¶ 17).

[13]  *See Alford*, 13 F.Supp.3d at 606 (noting that the Louisiana Supreme Court has equated the

12

dismissal.    Whether Marathon's alleged tortious conduct was continuous such as to thwart the commencement of prescription is an issue that is best suited for consideration if, and when, following discovery, Marathon elects to file a motion for summary judgment challenging the timeliness of Rich Land's tort claims.    Until then, the motion to dismiss these *claims* is premature and unnecessary.    *See Morgan Plantation, Inc. v. Tennessee Gas Pipeline Co., LLC*, Civ. Action No. 16-1620, 2017 WL 4864489, at *7 (W.D. La. Sept. 21, 2017), *R&R adopted,* 2017 WL 4847523 (W.D. La. Oct. 26, 2017) (no need to address continuing tort doctrine where plaintiff had not yet invoked it).

## IV.    Civil Code Article 667

Rich Land contends that Defendants are liable under former and post-April 16, 1996 versions of Louisiana Civil Code Article 667 for damages caused by their handling, discharge, and disposal of toxic and hazardous oil field waste on, or adjacent to Rich Land's property. (Petition, ¶¶ 19, 31).    Rich Land also maintains that Defendants are liable under Article 11 of the Louisiana Mineral Code, Louisiana Revised Statute § 31:11, for failing to exercise their mineral rights with reasonable regard for the rights of Rich Land, as surface owner.    *Id*., ¶ 45.

Marathon urges dismissal of Rich Land's claims for strict liability under Civil Code Article 667 and Mineral Code Article 11, whereas Chevron originally petitioned the court for dismissal of Rich Land's claims for strict or absolute liability under Article 667 only.    In its reply, however, it seems to have expanded its motion to include claims under Mineral Code Article 11.

---

concepts of continuing tort, continuing trespass, and continuing nuisance) (citing *Hogg v. Chevron USA, Inc.*, 45 So.3d 991, 1002-1003 (La. 2010)).

Louisiana Mineral Code Article 11 provides that "[t]he owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other . . ."  LA. R. S. § 31:11A.  The comments to the article suggest that, in appropriate circumstances, ultrahazardous uses of the land or mineral right may result in strict liability.  *Id*. (comment).

Similarly, prior to the 1996 amendments to the Civil Code, Article 667 imposed "strict liability that [did] not depend upon negligence or willfulness," and absolute liability for damage that was caused by an "ultrahazardous" activity.  *See Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1266, n.17 (5th Cir.1985) (detailing history of ultrahazardous activities jurisprudence); *see Alford, supra* (pre-amendment 667 imposed "strict" liability).[14]  Prior to 1996, ultrahazardous activities were those that could cause injury even when conducted with the greatest prudence and care, such as pile driving, storage of toxic gas, blasting with explosives, and crop dusting with airplanes.  *Chandler v. Bunge Corp.*, 489 So.2d 275, 280 (La. App. 4th Cir. 1986) (citing *Langlois v. Allied Chemical Corporation,* 258 La. 1067, 249 So.2d 133 (1971)).   To determine whether an activity was ultrahazardous, the courts employed a three-prong test:   "(1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to cause injury."  *Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.*, 683 So.2d 1319, 1321–22 (La. App. 3d Cir. 1996) (citations omitted).   Whether an activity

---

[14]  Article 667 formerly provided that, "[a]lthough a proprietor may do with his estate what he please, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."  *Alford*, 2014 WL 1612454, at \*19.

qualifies as ultrahazardous in Louisiana is an issue of law.   *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987); *Perkins, supra*.

In 1996, however, the legislature amended article 667 to require a showing of negligence for any claim of damages under article 667, except for damage caused by an ultrahazardous activity, which the legislature expressly limited to pile driving or blasting with explosives. *Alford*, 2014 WL 1612454, at *19 (citations omitted).

In their motions, Marathon and Chevron asserted that the drilling operations at issue in this case do not constitute "ultrahazardous" activities.   Certainly, the petition contains no allegations that Marathon and Chevron engaged in pile driving or blasting with explosives, and, thus, they clearly did not engage in ultrahazardous activities as required to impose strict or absolute liability under Article 667 after the 1996 amendment.

For the period prior to the 1996 amendment, Marathon and Chevron stress that the Fifth Circuit has held that drilling operations are not ultrahazardous.   *Ainsworth*, 829 F.2d at 550. However, Rich Land also seeks damages for storage of hazardous oilfield waste in pits.   The deposited oilfield waste included naturally occurring radioactive material ("NORM"), produced water, drilling fluids, chlorides, hydrocarbons, and heavy metals.   (Petition, ¶ 7).   Rich Land further alleged that "[s]ince the 1920s, it has been common knowledge in the oil industry that the disposal of oilfield wastes in unlined earthen pits inevitably results in seepage . . ."   *Id*.

If, as alleged, seepage is inevitable, then this suggests that substandard conduct is not required to cause damage to neighboring land owners, thereby plausibly satisfying the third prong of the test for ultrahazardous activities, which is the only prong seriously contested here. *See Updike v. Browning-Ferris, Inc.*, 808 F. Supp. 538, 542 (W.D. La. 1992) (finding that the storage of hazardous industrial waste in open pits or ponds satisfies the first two prongs).   In

15

other words, at the pleading stage, Rich Land states a plausible claim for absolute or strict liability under Mineral Code Article 11 and pre-1996 amendment to Civil Code Article 667 stemming from Marathon and Chevron's potentially ultrahazardous activities. *See Watson, supra*; *Updike, supra*. That is not to say that the court ultimately will find that storage of hazardous oilfield waste is an ultrahazardous activity, only that such a determination must be made after consideration of a fully developed record regarding industry practice and safety. *See e.g., Bartlett, supra* (record contained no evidence that a hazardous waste disposal facility could cause harm even where due care is exercised); *Chandler v. Bunge Corp.*, 489 So.2d 275, 280 (La. App. 4th Cir. 1986) (on the existing record, the court could not determine, as a matter of law, whether the risks inherent in the activity of loading grain could cause injury, even when conducted with the greatest prudence and care).

The foregoing discussion, however, does not end the matter because in its reply brief, Chevron further argued that Rich Land is unable to meet the requirements for liability under Articles 667 and 11, regardless of the applicable standard. To establish liability for harm incurred as a result of violations of Article 667, a plaintiff must show the defendant is "(1) a proprietor (2) who conducts "work" on his property (3) that causes damage to his neighbor." *Robertson v. Chevron USA, Inc.*, Civ. Action No. 15-874, 2017 WL 679406, at *7 (E.D. La. Feb. 21, 2017) (citation omitted). Articles 667 and 11 bestow real rights and obligations between owners of adjacent immovable property. *Glob. Mktg. Sols., LLC v. Blue Mill Farms, Inc.*, 153 So.3d 1209, 1215 (La. App. 1st Cir. 2014). However, if the mineral lease expires before the plaintiff acquired the property, then the land owner and the mineral lessee were never contemporaneous neighboring owners as required to support liability under Articles 667 and 11. *Glob. Mktg. Sols., supra*; *Grace Ranch, LLC v. BP Am. Prod. Co.*, 252 So.3d 546, 555–56 (La. App. 3d Cir. 2018) (the subject lease expired prior to plaintiff's acquisition of the property, and

16

thus, plaintiff had no real right of action against defendants because they were never neighboring proprietors); *accord Bundrick v. Anadarko Petroleum Corp.*, 159 So.3d 1137, 1143 (La. App. 3d Cir. 2015).

Chevron relies on evidence adduced by Rich Land to establish that Chevron's predecessor-in-interest, Gulf Refining Company ("Gulf"), never leased the property while Rich Land owned it. Rather, Gulf's lease with the prior owner and lessor of the Property, Chess & Wymond Company of Louisiana ("C & W"),[15] unequivocally terminated in 1928. *See* Dec. 6, 1928 Release and Quitclaim by Gulf to C & W; Rich Land Opp. Brief, Exh. A, pg. 5 [doc. # 61-1]. Moreover, Rich Land was not incorporated until almost 20 years later in 1947. *See* La. Sec'y of State Bus. Filings Website.[16] Because Chevron and Rich Land were never neighbors, Rich Land fails to state a claim for relief against Chevron under Articles 667 and 11.

Marathon adopted Chevron's arguments regarding Articles 667 and 11. *See* Marathon Reply Brief. Furthermore, Rich Land attached to its opposition three instruments involving Marathon's predecessor, Transcontinental Oil Company ("Transcontinental"), the latest of which represents a 1922 amendment to a 1919 mineral lease between C & W and Transcontinental that extended the lease until March 1, 1924, absent drilling of a second well. (Mineral Lease; Pl. Opp. Brief, Exh. A, pgs. 12-14 [doc. # 61-1]).[17] Of course, Transcontinental's second well, the

---

[15] *See* Richland Opp. Brief, pg. 54.

[16] https://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails.aspx?CharterID=69259_C9AF308731 (last visited on May 12, 2022). Courts may take judicial notice of public records, including Secretary of State records. *Ruston Louisiana Hosp. Co., LLC v. Lincoln Health Found., Inc.*, Civ. Action No. 18-0881, 2018 WL 6332850, at *3 (W.D. La. Nov. 20, 2018), *R&R adopted,* 2018 WL 6331698 (W.D. La. Dec. 4, 2018).

[17] Marathon objects to the court's consideration of the leases because they were not included in or attached to Rich Land's petition. While Marathon technically may be correct, Rich Land

Chess-Wymond #2 (Serial No. 7642), was drilled as a dry hole in 1924.   (Petition, Exh. B, Operator History, pg. 1 [doc. # 1-4]).   There is no indication that the lease extended beyond that date, and Rich Land did not come into existence until 23 years later.   Accordingly, because Marathon and Rich Land were never neighbors, Rich Land fails to state a claim for relief against Marathon under Articles 667 and 11.

## V.    Premises Liability under Civil Code Articles 2317 and 2322

Rich Land contends that Chevron and Marathon are strictly liable under Louisiana Civil Code Articles 2317 and 2322.   (Petition ¶ 19).   Article 2317 imposes liability on an owner for damage caused by things in his custody, whereas Article 2322 imposes liability on the owner of a building for damage caused by the building's ruin.   Pre-1996, "Articles 2317 and 2322 imposed strict liability based on status as owner/custodian, rather than personal fault."[18]   *Morgan Plantation, Inc.*, 2017 WL 4864489, at *6 (citation omitted).   To state a claim under the pre-1996 Article 2317, a plaintiff must plead that (1) the defendant had custody of the thing; (2) "the thing had a 'defect' or a condition creating an unreasonable risk of harm"; and (3) "the defective condition caused plaintiff's injuries."   *Id.* (citations omitted).   Under pre-1996 Article 2322, a

---

simply may seek to amend to his complaint to add these leases that, in any event, are central to its allegations.   The court perceives no good reason to require Rich Land to go through the formal exercise of amending its complaint to include this evidence.   Moreover, at least as to this issue, consideration of the evidence benefits Marathon.   The objection is overruled.

[18]  Civil Code Article 2317.1, enacted in 1996, "abolished the concept of strict liability" that existed in Louisiana under the pre-1996 version of Article 2317.   *Broussard v. Voorhies*, 970 So.2d 1038, 1042 (La. App. 1st Cir. 2007).   Before the 1996 amendments, the "sole distinction between the burden of proof necessary to recover under a negligent action . . . versus a strict liability action . . . was . . . proving the defendant's scienter."   *Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689, n.9 (La. 2001); *Dupree, supra*.   Article 2317.1 "eliminated that distinction."   *Lasyone*, *supra*; *Dupree*, 765 So. 2d at 1007, n.5.   In other words, under pre-amendment Article 2317, the custodian of a thing was presumed to know "of the risk presented by the thing under his control."   *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 975 (5th Cir. 1991) (citation omitted).

plaintiff must plead "(1) the defendant owned the building; (2) the building posed an unreasonable risk of harm to others; and (3) the plaintiff was injured by virtue of that risk." *Id.* "In the context of the Louisiana Civil Code, a 'building' is a type of permanent construction that would be classified as an immovable. *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1290 (La. 1978).

Marathon and Chevron argue that Rich Land's claims under Articles 2317 and 2322 are subject to dismissal because Rich Land failed to allege facts to show that any of Marathon and Chevron's facilities or equipment suffered from a "defect" as contemplated by Article 2317 or that Rich Land suffered any damage stemming from the "ruin" of a "building" owned by Marathon and Chevron. Rich Land responded, in part, by stating that "the equipment and facilities used by defendants, including unlined earthen pits, were under the custody and control of the defendants at the time the pollution occurred." (Rich Land Opp. Memo., pg. 32).

Upon review, Rich Land appears to have alleged facts sufficient to plausibly suggest a defect or a ruinous building that was within Marathon's and Chevron's custody. First, Rich Land broadly alleged that Defendants had custody of the facilities and equipment that allegedly caused the contamination. (Petition ¶ 19). Second, Rich Land alleged that Defendants' operations resulted in oilfield waste deposited in unlined earthen pits, which seeped and contaminated the soils and waters on the Property. *Id.*, ¶ 7. The oilfield waste included hazardous and toxic substances that can cause serious health-related problems. *Id.*, ¶¶ 7-11. Third, Rich Land alleged that the damage to the Property was caused by the disposal of the oilfield wastes in the unlined pits. *Id.*, ¶¶ 2, 7.

Marathon and Chevron argue that Rich Land never identified any defect in the unlined, earthen pits. However, Rich Land alleged that the pits leaked, which presumably is not

19

normal.[19]   The fact that the pit(s) leaked plausibly suggests a defect in design or construction. For instance, it is plausible that the leak would not have occurred had the pit(s) been lined, rather than unlined.   Alternatively, the severe leaking plausibly indicates that the earthen pit(s) was not built in compliance with design or industry specifications.   While Rich Land will need to prove more as the case progresses, its allegations suffice to state a plausible claim for relief at the pleading stage.[20]

Rich Land further alleged that Defendants built sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators, and injection facilities.   (Petition, ¶ 5).   If these constructions look anything like the structures depicted in the photographs attached to the Petition, *see* Petition, Exh. D, [doc. # 1-17, pgs. 8-10], they plausibly appear to be permanent immovables affixed to the land, i.e., buildings.   Moreover, given the apparent amount of rust and alleged leaking, they plausibly are in a ruinous or deteriorated state.   While the court understands that Chevron and Marathon contest whether these constructions even depict their equipment at all, the court cannot rule out *at the pleading stage* that Chevron and Marathon left like constructions that are in a similar state of disrepair.

In short, Rich Land's petition suffices to state a cause of action under Articles 2317 and 2322.   *See, e.g.*, *Morgan Plantation, Inc.*, 2017 WL 4864489, at *6 (finding allegations that Defendants used "earthen pits for waste storage and disposal," which leaked "toxic and

---

[19]  If it *was* normal or inevitable, then arguably oilfield waste storage represents an ultrahazardous activity for which Marathon and Chevron are liable, even in the absence of fault.

[20]  Chevron cited *Broussard v. Pennsylvania Millers Mut. Ins. Co.*, for the unremarkable proposition that a "defect cannot be inferred solely from the fact that the accident occurred." *Broussard v. Pennsylvania Millers Mut. Ins. Co.*, 406 So.2d 574, 576 (La. 1981).   In *Broussard*, however, the court determined that there was no apparent defect in an aquarium stand that toppled over onto a child after he apparently climbed up on the stand and pulled it down.   *Id*. Needless to say, those circumstances are absent here.

hazardous substances" satisfied the pleading standards to state a claim under Articles 2317 and 2322); *Watson, supra* (same).

## VI.    Claims for Breach of Lease, including those as a Third-Party Beneficiary

Rich Land alleged that Defendants violated express and implied obligations under mineral and surface leases and/or other agreements that apply to the Property.    (Petition ¶¶ 18, 20-23, 27, 44).    To the extent that Rich Land does not enjoy a right to relief as a lessor under the leases, Rich Land asserted claims in its capacity as a third-party beneficiary for breach of the leases and as owner of the servient estates of the limited personal servitudes created by the leases.  *Id.*

Marathon and Chevron seek dismissal of Rich Land's claims for breach of contractual provisions because Rich Land failed to identify any leases held by Marathon and Chevron, or their predecessors, much less any express provisions that were breached.    Chevron added that Rich Land did not allege facts to show that Rich Land even existed during the time that Chevron's predecessor, Gulf, operated, and thus, Rich Land could not have granted a lease to Gulf.    In its motion, Marathon further argued that Rich Land's third-party beneficiary theory of recovery did not hold water because the Petition failed to identify any contractual language that would support the elements of that alternative vehicle for contractual recovery.

Rich Land responded to Marathon and Chevron's arguments by producing copies of the leases that Gulf and Transcontinental entered into with Chess & Wymond.    Rich Land explained that George Franklin was the predecessor to Rich Land and that he worked for Chess & Wymond at their lumber mill in Holly Ridge.    (Pl. Opp., pg. 10).    In lieu of money, Franklin took his commission in the land that he was managing for Chess & Wymond.    *Id.*    As a result, Rich Land contends that it must be considered a third-party beneficiary to the leases that were confected prior to its incorporation.    *Id.*    Rich Land also emphasized that, even if there are no

21

express remediation provisions in the lease, there is an obligation in every lease that is implied by law.

In its reply brief, Marathon responded that Rich Land's historical roots notwithstanding, Rich Land was neither a party to the lease, nor even in existence when the lease was in effect. Furthermore, no provision in the leases could be read to confer third-party beneficiary status on Rich Land.   Chevron likewise detailed why Rich Land was not a third-party beneficiary under the lapsed leases.

The foregoing considered, Rich Land does not dispute that the subject leases it uses to attempt to impose liability on Chevron and Marathon expired 19 or more years before Rich Land came into existence, and, thus, before Rich Land could have acquired any right to enforce the express or implied terms of the lease.   Moreover, Rich Land did not allege that it was assigned any rights to recover damages under the long-expired leases.   These circumstances preclude Rich Land's right to recover damages as an alleged party to the leases:

> [t]he general rule, often referred to as the subsequent purchaser doctrine, is that a purchaser cannot recover from a third party for property damage inflicted prior to the sale. It is the landowner at the time of the alleged damages who has the real and actual interest to assert a claim. The right to damages conferred by a lease, whether arising under a mineral lease or a predial lease, is a personal right, not a property right; and, as a personal right, it does not pass to the new owners of the land when there is no specific conveyance of that right in the instrument of sale.

*Wagoner v. Chevron USA Inc.*, 55 So.3d 12, 22–23 (La. App. 2d Cir. 2010) (internal citations omitted); *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So.3d 246, 276 (La. 2011) (damage to property, whether apparent or not, is a personal right of the landowner that remains with that landowner, unless the right is explicitly assigned or subrogated to another); *Glob. Mktg. Sols., LLC v. Blue Mill Farms, Inc.*, 153 So.3d 1209, 1216 (La. App. 1st Cir. 2014) (mineral leases convey personal rights only, and, absent assignment of rights, a subsequent land owner

has no real right to sue the lessee for the damage to the land).

In other words, it is impossible to transfer rights to an assignee under an expired mineral lease . . .”  *Litel Expls., L.L.C. v. Aegis Dev. Co., L.L.C.*, 307 So.3d 1087, 1093 (La. App. 3d Cir. 2020); *writ denied sub nom. Litel Expls., L.L.C. v. Apache Dev. Co., L.L.C.*, 310 So.3d 184 (La. 2021); *accord Grace Ranch, LLC v. BP Am. Prod. Co.*, 252 So.3d 546, 559 (La. App. 3d Cir. 2018); *Lejeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C.*, 981 So.2d 23 (La. App. 3d Cir. 2007) (since the mineral lease had expired at least two years before plaintiff acquired the property from the seller, the seller was not a mineral lessor and could not assign any rights under the expired lease in that sale).

In an attempt to circumvent its lack of privity to enforce rights under the expired mineral leases, Rich Land contends that it is a third-party beneficiary under the leases.   The Civil Code provides that, “[a] contracting party may stipulate a benefit for a third person called a third party beneficiary.   Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary’s agreement.” LA. CIV. CODE ART. 1978.   In Louisiana, “such a contract for the benefit of a third party is commonly referred to as a ‘stipulation *pour autrui.*’” *Eagle Pipe & Supply, Inc.*, *supra* (citation omitted).   There are three criteria for determining whether contracting parties provided a benefit for a third party:   “1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee.”   *Id*.   Furthermore, “a stipulation *pour autrui* can never be presumed and the party claiming its benefit bears the burden of proof.”   *Id.*

To establish that it is a third party beneficiary under the long-expired leases, Rich Land points to the following language in the leases that Chess & Wymond granted to Gulf:   “[t]he Lessee shall pay for damages caused by its operations to timber and growing crops on said

lands." *See* Leases; Pl. Opp. Memo., Exh. A [doc. # 61-1, pgs. 1-4].   The foregoing provision, however, is not an open-ended "all damages" clause that courts have used to establish the contracting parties' intent to bind a lessee to redress harms suffered by non-parties to the lease. *See Andrepont v. Acadia Drilling Co.*, 231 So.2d 347, 353, 255 La. 347, 365 (La. 1969); *Hazelwood Farm, Inc. v. Liberty Oil & Gas Corp.*, 790 So.2d 93, 101 (La. App. 3d Cir. 2001). 6/20/01).   Moreover, Rich Land does not contend that it has suffered harvestable timber or crop damage as a result of Gulf's operations.

Additionally, Rich Land points out that as consideration for the 1922 amendment to the lease between Chess & Wymond and Transcontinental, the amended lease required Transcontinental to "pay to the Holly Ridge Lumber Co. the damages sustained by it on account of salt water produced by the well drilled on the said land . . ." *See* Amend. Lease; Pl. Opp. Memo., Exh. A [doc. # 61-1, pg. 13].   Again, however, the foregoing provision is a far cry from the open-ended all damages clauses at play in *Andrepont* and *Hazelwood Farm, supra*. Moreover, at best, the provision created a stipulation *pour autrui* in favor of Holly Ridge Lumber Co. for damages (likely to timber owned by Holly Ridge pursuant to a timber lease) caused by salt water as a result of the initial well drilled by Transcontinental.   There is no indication that Rich Land is a successor to Holly Ridge or that it seeks recovery for damages to harvestable timber.

In sum, the court finds that Rich Land enjoys no right (either as a party or as a third party beneficiary) to seek relief for alleged violations of express or implied provisions of the mineral leases that Rich Land's ancestor-in-title executed with Chevron and Marathon's predecessors.

## VII.    Breach of Obligations Owed by Servitude Owners

Rich Land asserted claims for breach of obligations of servitude owners pursuant to various Civil Code and Mineral Code provisions, "to the extent such servitudes exist."

(Petition, ¶¶ 22, 33).   Marathon and Chevron seek dismissal of these claims because Rich Land never alleged that they held personal or mineral servitudes on the Property.   In its response, Rich Land conceded that Chevron and Marathon never operated under a mineral servitude.   (Pl. Opp. Memo., pg. 61).   Accordingly, it agreed to withdraw the claim, subject to its right to amend the petition if it uncovers evidence to support such a claim.   *Id.*

To date, Rich Land has not withdrawn or voluntarily dismissed this claim(s).   Given Rich Land's concession, however, the undersigned will recommend that the claim(s) be dismissed, with prejudice.   Of course, because the instant motion disposes of less than all claims and parties, it is not a final judgment and remains subject to revision at any time before conclusion of the case.   FED. R. CIV. P. 54(b).   If discovery uncovers support for this claim, then Rich Land may petition the court for reconsideration.   However, Rich Land may not delay in its efforts.

## VIII.   Exemplary/Punitive Damages

Chevron and Marathon seek dismissal of Rich Land's claims for exemplary damages under former Civil Code Article 2315.3 because the article only applies to causes of action that arose between its enactment in 1984 and its repeal in 1996.   *Alford*, 13 F.Supp.3d at 603 (citations omitted).   However, Rich Land expressly limited its claim for exemplary (punitive) damages under Article 2315.3 to acts or omissions that occurred during 2315.3's applicability. (Petition, ¶ 29).   Moreover, in response to the motions, Rich Land agreed to withdraw its claim for exemplary (punitive) damages against these Defendants, subject to its right to amend the petition, if circumstances change. (Pl. Opp. Memo., pg. 57).

To date, Rich Land has not withdrawn or voluntarily dismissed this claim(s).   Given Rich Land's concession, however, the undersigned will recommend that the claim(s) be dismissed, with prejudice.   Of course, because the instant motion disposes of less than all claims

25

and parties, it is not a final judgment and remains subject to revision at any time before

conclusion of the case.   Fed. R. Civ. P. 54(b).   If discovery uncovers support for this claim,

then Rich Land may petition the court for reconsideration.   However, Rich Land may not delay

in its efforts.

**IX.   Civil Fruits**

Rich Land alleged in the Petition that Defendants "derived substantial economic benefits"

from their storage of hazardous waste on its property because the storage allowed Defendants "to

avoid the substantial costs and expenses associated with the proper disposal of this toxic

pollution and waste."   (Petition, ¶ 32).   Consequently, Rich Land claims entitlement to the civil

fruits derived from Defendants' trespass pursuant to Louisiana Civil Code Article 486, which

provides that "[a] possessor in bad faith is bound to restore to the owner the fruits he has

gathered, or their value, subject to his claim for reimbursement of expenses."   LA. CIV. CODE

ART. 486.   Alternatively, even if the storage costs are not technically "civil fruits," Rich Land

seeks the economic value for the storage or the rental value of the storage.   (Petition, ¶ 32).

Chevron and Marathon urge the court to dismiss Rich Land's claim for civil fruits

because the alleged economic benefit derived from storage of oilfield waste on the property does

not constitute a civil fruit.   The Civil Code provides that "[f]ruits are things that are produced by

or derived from another thing without diminution of its substance . . . [c]ivil fruits are revenues

derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest,

and certain corporate distributions."   LA. CIV. CODE ART. 551.   However, courts have held that

"savings" or economic benefit realized by trespassing mineral lessees

> in storing/disposing of their production waste/byproducts on the property rather
> than storing/disposing of them offsite does not qualify as a "fruit" or a "civil fruit."
> Nothing was produced by or derived from the property as a result of the
> storage/disposal of the waste; and, further, there were no revenues, such as rentals,
> interest or a corporate distribution, derived from the property by virtue of the

storage/disposal of the waste.

*Wagoner v. Chevron USA Inc.*, 55 So.3d 12 (La. App. 2d Cir. 2010); *Alford v. Anadarko E & P Onshore LLC*, Civ. Action No. 13-5457, 2014 WL 1612454, at *18 (E.D. La. Apr. 22, 2014) (same); *Aertker v. Dresser, LLC*, Civ. Action No. 22-0323, 2022 WL 1415716, at *5 (W.D. La. May 4, 2022) (same).   The court finds these cases persuasive and follows them here.

Furthermore, as in *Alford*, the undersigned does not discern from the Petition where Rich Land is seeking to disgorge profits from Chevron and Marathon as a component of civil fruits. *See Alford, supra* (distinguishing *Brown Fur Co. v. Jones–Frere Fur Co.,* 110 So. 630 (1926) and *Corbello v. Iowa Prod.*, 850 So.2d 686, 691 (La. 2003) on that basis).   Even if Rich Land *were* seeking to disgorge profits, the scope of that remedy, at least in the present context, cannot plausibly exceed the value of the unpaid storage rent and remediation costs, which arguably may be recovered as damages components of Rich Land's trespass and tort claims.   *See Mary v. QEP Energy Co.*, 24 F.4th 411, 420 (5th Cir. 2022) (plaintiff not entitled to disgorgement under an accession theory where no evidence that defendant earned any additional profit on account of the minor trespass).

## X.     Unjust Enrichment

Rich Land alleged in its Petition that if it "has no other adequate remedy at law, defendants are liable for unjust enrichment damages, as the defendants have been unjustly enriched by their unauthorized use of plaintiff's land to store and dispose of toxic and hazardous contamination."   (Petition ¶ 35).

Marathon and Chevron argue that Rich Land has no claim for unjust enrichment because Rich Land has asserted alternative theories of recovery under the law.   Louisiana Civil Code Article 2298 provides that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person . . . [t]he remedy declared here is subsidiary

and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." LA. CIV. CODE ART. 2298.   Moreover, "[u]njust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided." *Lejeune Bros., Inc. supra* (citations omitted).

Here, there are no allegations that the law does not provide adequate remedies for oil and gas contamination.   Rather, if Rich Land does not prevail, it likely will be because it did not acquire the right to the applicable remedies, or, by law, the right to seek redress has lapsed by the passage of time.   Consequently, Rich Land does not have a claim for unjust enrichment, and the claim is subject to dismissal.   *See Lejeune Bros., Inc., supra*.   Rich Land concedes as much. (Pl. Opp. Brief, pg. 55).

## XI.    Land Loss, Subsidence, and the Cost of Backfilling

In its prayer for relief, Rich Land requests "damages for land loss and subsidence and the cost of backfilling of canals and other excavations, where appropriate."   (Petition, Prayer). Marathon and Chevron seek dismissal of these damages claims because Rich Land failed to cite any applicable contract or law imposing a duty to conduct this sort of remediation, as well as its failure to set forth any facts to show that Marathon or Chevron dredged any canals or caused any land loss or subsidence.

In its response, Rich Land observed that it was well known in the industry that subsidence may be caused by the failure to take necessary precautions during the removal of subsurface fluids.   (Pl. Opp. Brief, pgs. 18-22).   Rich Land further noted that mineral lessees have an implied obligation to redress damages that exceed normal wear and tear stemming from negligent or excessive use.   *Id*.   Rich Land explained that at least one of the wells on the Property has a 40-foot diameter crater around its base, which was caused by oil and gas production, and possibly by the blowout of a Marathon heritage well.   (Pl. Opp. Brief, pgs. 18-

28

22).   Rich Land added that Chevron also had a well that experienced a blowout.   *Id.*

Even so, the court already has determined that Rich Land does not state a claim for relief against Marathon and Chevron for breach of express or implied obligations under their predecessors' expired leases.   *See* discussion, *supra*.   Thus, insofar as Rich Land grounds its damages claim for land loss, subsidence, and backfilling to breach of express or implied contractual provisions, the claim necessarily fails.   Moreover, the additional facts Rich Land included in its brief to tie Marathon and Chevron to subsidence on the Property do not appear in the Petition, and, absent amendment, cannot be considered.   Even if they were, the new facts fall short of definitively linking attached photographs depicting a crater around an exposed pipe to any Marathon and Chevron heritage wells.

In short, Rich Land fails to state a claim for damages for land loss, subsidence, and backfilling against Chevron and Marathon.   *See Alford*, 13 F. Supp. 3d at 600 (dismissing land loss and subsidence because plaintiffs failed to allege that any land loss or subsidence occurred during the term of the lease); *Watson, supra* (plaintiffs failed to allege that defendants engaged in activities that caused land loss or subsidence or that any land loss or subsidence even occurred).

## XII.    Standalone Claim under Act 312

Rich Land alleged in its Petition that "[t]o the extent [it] does not have a right of action under private law to seek damages claimed in this petition, Plaintiff asserts that [it] has the right of action under La. R.S. 30:29."[21]    (Petition, ¶ 44).    Marathon and Chevron contend that the foregoing, conditional standalone claim under § 30:29 should be dismissed because the statute is procedural and does not create an independent cause of action.    Indeed, § 30:29 plainly provides that "[t]his Section shall not be interpreted to create any cause of action or to impose

---

[21] Louisiana Revised Statute § 30:29 was enacted pursuant to 2006 La. Acts 312.

additional implied obligations under the mineral code or arising out of a mineral lease." LA. R.S. § 30:29(H)(2).

In its response, Rich Land disavows any intention to seek damages under Act 312 as an independent cause of action. (Pl. Opp. Brief, pgs. 22-23). Instead, Rich Land confirmed that all of its asserted causes of action arise under Louisiana private law, not Act 312. *Id.* Rich Land agreed that Act 312 simply provides a procedure for judicial resolution of claims for "environmental damage," and subsequent remediation. *Id.*

Pursuant to law, and Rich Land's concession in accordance therewith, the undersigned finds that Rich Land has no independent cause of action under § 30:29, and this conditional claim should be dismissed.[22] *See Wagoner, supra*; *Watson, supra*.

## XIII. Civil Code Article 2688

Louisiana Civil Code Article 2688 was enacted in 2004, with an effective date of January 1, 2005. LA. CIV. CODE ART. 2688. It provides that "[t]he lessee is bound to notify the lessor without delay when the thing has been damaged or requires repair, or when his possession has been disturbed by a third person. The lessor is entitled to damages sustained as a result of the lessee's failure to perform this obligation." *Id.* Rich Land contends that the lessee Defendants breached their obligation to notify Rich Land of the contamination on the Property once Article 2688 became effective in 2005. *Id.* As a result, Defendants' failure to provide notice "constitutes an active and substantial breach of the applicable mineral and surface leases" and "constitutes a tortious breach of the applicable leases." *Id.*

Marathon and Chevron argue that Rich Land has no cause of action under Article 2688 because their predecessors' leases terminated prior to 1930, and the law does not apply

---

[22] The dismissal of the standalone claim does not impact whether the procedures outlined by the statute apply in this case.

retroactively.   Indeed, the Louisiana Supreme Court has recognized that, "[w]here the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute."   *Block v. Reliance Ins. Co.*, 433 So. 2d 1040, 1044 (La. 1983).

In response, Rich Land acknowledged that Article 2688 applies to any lease on the Property still in effect on January 1, 2005.   (Pl. Opp. Brief, pg. 56).   Rich Land then cited two cases which, together, essentially recognize that a builder has a duty of disclosure to his customer whenever he acquires knowledge of a hazard which arises from ordinary usage of the structure.   *Bunge Corp. v. GATX Corp.*, 557 So.2d 1376 (La. 1990); *Kemper v. Don Coleman, Jr., Builder, Inc.*, 752 So.2d 861 (La. App. 2d Cir. 1999).   The failure to disclose potentially gives rise to a claim for fraud or negligence.   *Id.*

Be that as it may, these portions of the pending motions seek dismissal of Rich Land's claims under Article 2688, not Louisiana tort law.   Rich Land does not argue that Article 2688 applies to leases such as Chevron's and Marathon's that expired long before the article came into effect.   Accordingly, Rich Land's claims under Article 2688 are inapplicable and subject to dismissal on that basis.   *See Alford*, 13 F. Supp. 3d at 598 (holding that "article 2688 is not applicable to this case because it was enacted in 2005, many years after the lease in question was executed"); *Ritchie Grocer Co.*, 2015 WL 9589890, at *4 (same); *Tureau*, 2015 WL 4694072, at *7 (same); *Watson, supra* (same).

## XIV.   Louisiana Revised Statute § 30:16

Rich Land contends that it has a right to seek injunctive relief against Defendants under Louisiana Revised Statute § 30:16 because Defendants have failed to remediate the Property in violation of Statewide Order 29-B, and the Commissioner of Conservation failed to bring suit to remediate the violation, despite notice.   (Petition, ¶¶ 50-52).   Specifically, Rich Land alleged

31

that Defendants violated Statewide Order 29-B by failing to close their oilfield pits in compliance with regulatory standards.

Chevron urges the court to dismiss this claim for two reasons:    1) Rich Land failed to comply with the statute's pre-suit notice requirements by failing to identify the alleged violator (Chevron) that it wanted the Commissioner to sue; and 2) Statewide Order 29-B cannot be applied retroactively, and neither Chevron, nor its predecessor, Gulf, had an interest in any lease or conducted any operations after Statewide Order 29-B took effect.    Marathon petitions the court to dismiss the § 30:16 claim only on the second ground.    Rich Land contends the arguments are baseless.

Neither side has identified a Louisiana Supreme Court decision that definitively resolves these issues.    *But see* discussion, *infra*.    In the absence of a decision by the Louisiana Supreme Court on a given issue, federal courts are compelled to make an *Erie* guess.    *In re Katrina Canal Breaches Litigation*, 495 F.3d at 206; *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 628 (5th Cir. 2000).    In so doing, the court must use its best judgment to determine

> how [the Louisiana Supreme C]ourt would resolve the issue if presented with the same case.    In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law:    the constitution, codes, and statutes.    Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana.    Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

*In re Katrina Canal Breaches Litigation*, 495 F.3d at 206 (internal citations and quotation marks omitted).

In Louisiana, "the starting point for the interpretation of any statute is the language of the statute itself," *Palmer v. Louisiana State Bd. of Elementary & Secondary Educ.*, 842 So.2d 363,

32

368 (La. 2003) (citations omitted),[23] to which the court applies the following principles,

- When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature.

- When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.

- The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter.

- When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.

- Laws on the same subject matter must be interpreted in reference to each other.

LA. CIV. CODE ARTS. 9-13.

Furthermore, "[l]egislation is a solemn expression of legislative will." LA. CIV. CODE ART. 2. Consequently, the interpretation of legislation is primarily the search for legislative intent. *In re Succession of Boyter*, 756 So.2d 1122, 1128 (La. 2000) (citations omitted). Courts should give effect "to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided." *Id.* Finally, "where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." *Palmer, supra* (citations omitted).

The statutes at issue here provide, in pertinent part, that,

[w]henever it appears that a person is violating or is threatening to violate a law of this state with respect to the conservation of oil or gas, or both, or a provision of

---

[23] Rules of statutory construction are substantive; therefore, the court applies Louisiana law to resolve the statutory interpretation disputes at issue herein. *See Engines Sw., Inc. v. Kohler Co.*, 371 F. Supp.2d 830, 834 (W.D. La. 2005) (Hicks, C.J.).

this Chapter, or a rule, regulation, or order made thereunder, the commissioner shall bring suit to restrain that person from continuing the violation or from carrying out the threat . . .

LA. R. S. § 30:14

[i]f the commissioner fails to bring suit within ten days to restrain a violation as provided in R.S. 30:14, any person in interest adversely affected by the violation who has notified the commissioner in writing of the violation or threat thereof and has requested the commissioner to sue, may bring suit to prevent any or further violations, in the district court of any parish in which the commissioner could have brought suit . . .

LA. R. S. § 30:16

On February 25, 2021, counsel for Rich Land sent a certified letter to the Commissioner

of the Louisiana Department of Natural Resources, stating,

[t]his letter is being sent to you pursuant to La. R. S. 30:16.   Please be advised that we represent one or more of the owners of the property as shown and described in Exhibit A.   Violations of Statewide Order 29-B are evident on the property today. These violations include, but are not limited to, abandoned oil field equipment, unplugged wells, and/or open pits at the locations indicated in red circles on the map attached as Exhibit B and the photographs attached as Exhibit C.   These represent the violations that are known to the undersigned at this time.

**Pursuant to La. R. S. 30:16, please consider this letter a formal notice of regulatory violations under La. R. S. 30:14.   If action is not taken by your office within 10 days, we plan to sue the responsible parties for injunctive and other appropriate relief.**

(Feb. 25, 2021, Letter; Petition, Exh. E [doc. # 1-18]) (emphasis added).    The letter was

delivered on February 26, 2021, and Rich Land filed the instant suit eleven days later on March

9, 2021.   *Id*., Petition.

The plain terms of § 30:16 provide that an aggrieved person need only notify the

Commissioner of a violation, or the threat thereof, and ask him "to sue."    The statute does not

require the aggrieved person to provide the Commissioner with the names of the persons that he

would like the Commissioner to sue.    While, as a practical matter, it would be easier for the

34

Commissioner to sue the violating party if he had the party's name, the hurdle is not insurmountable.   For instance, the Commissioner could consult parish records to determine potentially responsible parties.   Alternatively, he could contact the aggrieved person to request additional information regarding the violating parties within the ten-day notice period.   Finally, the Commissioner simply could file suit "in the matter of" the affected property and include additional "John Doe" defendants for the, as yet unknown, violating parties.

If the legislature had wanted the aggrieved party to provide the Commissioner with the names of the violating parties that the aggrieved person wanted the Commissioner to sue, then the legislature easily could have so specified, just as it did in another statute within the same chapter.   *See* LA. R. S. § 30:29(B)(7)(a) (requiring that a notice of intent to investigate include names and addresses of all known owners of the property and the current operator).   Ultimately, the courts are not at liberty to impose additional pre-suit notice requirements upon an aggrieved person than what the plain text of the statute requires.   The undersigned is optimistic that the Louisiana Supreme Court would resolve this issue consistent herewith.

Chevron further argues that Rich Land's claim under § 30:16 still fails because all of Chevron's and/or its predecessor's operations on the Property ceased well before Statewide Order 29-B initially took effect in 1943.   Moreover, it was not until 1986 that the Louisiana Department of Natural Resources amended Statewide Order 29–B to require the registration and closure of existing unlined oilfield pits, plus remediation of various enumerated contaminants in the soil to specified standards.   *Marin,* 48 So.3d at 240.   Similarly, Marathon argues that it is not presently "violating, or threatening to violate" applicable regulations and rules under Statewide Order 29-B, because it ceased operating on Rich Land's Property almost 100 years ago.

For its part, Rich Land maintains that unplugged or improperly plugged wells, as well as

35

"open" production storage pits that remain on its Property, represent continuing violations of the conservation laws and regulations of the State for which it enjoys a right to relief under § 30:16. In support, Rich Land cited compliance orders and letters issued by the Louisiana Department of Natural Resources ("LDNR") to two oil companies in 2018 and 2020 for contamination caused by operations that occurred in the 1970s and 1980s.    (LDNR letter and order; Pl. Opp. Memo., Exh. E).    Rich Land also noted that the Louisiana Supreme Court has remarked in a footnote that "*the current owner of property always has the right to seek a regulatory cleanup of a contaminated site.*"    *Marin*, 48 So. 3d at 256, n.19 (citing La. R.S. 30:6(F); La. R.S. 30:16).

In its brief, Chevron emphasized that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only . . ."    LA. CIV. CODE ART. 6.[24]    However, the legislature authorized the Commissioner to issue rules, regulations, or orders "to require the plugging of each dry and abandoned well and the closure of associated pits, the removal of equipment, structures, and trash; and to otherwise require a general site cleanup of such dry and abandoned wells."    LA. R. S. § 30:4(C)(1)(iii).    It also authorized the Commissioner to require the plugging, removal and site cleanup of abandoned and unused well sites.    LA. R.S. § 30:4(C)(16)(a).    According to the Louisiana Supreme Court, the foregoing provision was enacted in 1990 and "clarifies any doubt about the commissioner's jurisdiction over site clean up *prior to its enactment*."    *Magnolia Coal Terminal v. Phillips Oil Co.*, 576 So.2d 475, 483 (La. 1991) (emphasis added).    A few years earlier, in 1986, the legislature passed the Louisiana Abandoned Oilfield Waste Site Law ("LAOWSL") whereby it acknowledged that abandoned pits or other sites posed both a "present and future hazard to the public health, safety and welfare," and thus, state laws and regulations had to comprehensively address these matters.

---

[24] "Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."    *Id*.

*See* LA. R.S. §§ 30:71-72.   In other words, the legislature intended to regulate well sites that no longer were in use, but continued to present hazards as of 1986.

In *Magnolia Coal Terminal*, the Louisiana Supreme Court noted that, "prior to January 20, 1986, when the rules were amended, the office of conservation did not regulate the closure of pits containing non-hazardous oil field waste."   *Magnolia Coal Terminal,* 576 So.2d at 481. However, the court went on to recognize that, since 1986, and certainly by the time of its decision in 1991, the Commissioner had received the authority to determine how a leaking well should be properly plugged and abandoned, even though the well had been leaking and purportedly plugged many years before 1986.   *Id.*   In fact, the court noted that "[u]nder the *new rules*, order 29–B require[d] that a well be plugged with 100 feet of cement at the perforated interval and a 30 foot surface plug," but the well in question had not been "plugged according to order 29–B."   *Id.* (emphasis added).   The court concluded that

> [t]he jurisdiction of the commissioner of conservation, outlined in LSA–R.S. 30:4, extends to the plugging of oil and gas wells. Since the evidence establishes that this well has been leaking since 1964, the commissioner of conservation must determine at a new hearing what procedures should be followed to have the well properly plugged and abandoned.

*Magnolia Coal Terminal*, 576 So.2d at 485.

In other words, the Commissioner has authority to implement procedures and regulations to govern the proper plugging of wells and closure of pits that purportedly had been plugged and closed long before the Commissioner received said authority and enacted those provisions. *Id.* at 481.   The legislature authorized the Commissioner to file suit against a person who is violating rules, regulations, or orders implemented by the Commissioner, and if he fails to do so timely after notice, then any person in interest adversely affected by the violation may bring suit

to prevent "any or further violations."    LA. R.S. §§ 30:14 & 30:16.[25]

Chevron further argues that the various iterations of Statewide Order No. 29-B included internal provisions stating that they did not become effective until specified dates, such as 1943 and 1986, i.e., not until well after the activities of Chevron and Marathon's predecessors on the Property had ceased.    While the regulations may not have become effective until the dates specified, it is clear that the legislature intended for the Commissioner to enact regulations that applied to prior wells and oilfield operations that *continued* to cause environmental concerns. *See* discussion, *supra* and *Magnolia Coal Terminal, supra*.    Rich Land contends that Marathon's and Chevron's predecessors' well shut down and pit closure procedures did not comply with more modern regulations and must be redressed to cease ongoing pollution effects.

Accordingly, the court finds that Rich Land has stated a plausible claim for relief under Louisiana Revised Statute § 30:16.

## XV.    Amendment

At the conclusion of its brief, Rich Land claimed entitlement to at least one opportunity to amend its complaint before any of its claims were dismissed with prejudice.    Certainly, a court is required to freely grant leave to amend when justice so requires it.    FED. R. CIV. P. 15(a)(2).    However, a court may deny leave when the plaintiff neither provides a copy of the proposed amended complaint, nor explains how the proposed pleading would cure the deficiencies in the initial complaint.    *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

---

[25] Of course, if Rich Land is not successful in having Chevron and Marathon remediate its predecessors' oil wells and storage pits on its Property, then it can so notify the Commissioner who may deem the site abandoned and undertake necessary cleanup measures.    La. R.S. §§ 30:74-75.    Thereafter, the Commissioner may initiate a civil action to recover the cleanup costs from any "responsible person" it can find.    LA. R.S. §§ 30:76.

Here, Rich Land's conditional request for leave to file a theoretical amended complaint to set forth unspecified facts does not comply with Rule 15 and is DENIED.

### Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Chevron and Marathon's motions to dismiss [47 & 53] be GRANTED IN PART AND DENIED IN PART.    IT IS RECOMMENDED that the motion be GRANTED with respect to only the following theories of recovery, claims and/or elements of damages asserted by Richland against said Defendants and that these theories, claims and/or elements be DISMISSED WITH PREJUDICE:    fraud; standalone claim under Restatement (Second) of Torts § 324A; Louisiana Civil Code Article 667; Louisiana Mineral Code Article 11; claims for express or implied breach of lease, including those as a third-party beneficiary; breach of any obligations as a servitude owner; exemplary/punitive damages; claim for civil fruits; unjust enrichment; damages for land loss, subsidence, and backfilling; any standalone claim under Act 312; and claims under Louisiana Civil Code Article 2688.    FED. R. CIV. P. 12(b)(6).

IT IS FURTHER RECOMMENDED that the motions [47 & 53] otherwise be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 31st day of May, 2022.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE